### S. Simcha GOLDMAN

v.

### SECRETARY OF DEFENSE, et al., Appellants.

### No. 82–1723.

United States Court of Appeals, District of Columbia Circuit.

On Appellee's Suggestion for Rehearing En Banc.

Aug. 10, 1984.

**658**

Nathan Lewin and David J. Butler, Washington, D.C., were on the suggestion for rehearing en banc filed by appellee.

Before ROBINSON, Chief Judge; WRIGHT, TAMM, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA and STARR, Circuit Judges.

### ORDER

PER CURIAM.

Appellee's suggestion for rehearing *en banc* has been transmitted to the full court and a majority of the judges in regular active service have not voted in favor of such rehearing. Accordingly, it is

ORDERED, by the Court, *en banc*, that appellee's suggestion for rehearing *en banc* is denied.

Statement dissenting from denial of suggestion to hear case *en banc* filed by Circuit Judge STARR.

Statement dissenting from denial of suggestion to hear case *en banc* filed by Circuit Judge GINSBURG, in which Circuit Judge SCALIA concurs.

STARR, Circuit Judge, dissenting from denial of suggestion to hear case en banc.

I respectfully dissent from the court's declination to hear this case en banc.

The tension between individual liberty guaranteed by the Bill of Rights and the demands of our armed services in carrying out their vital mission is an area fraught with extreme difficulty. But with respect I am constrained to conclude that, notwithstanding the sensitivity of the setting, the panel decision in this case, 734 F.2d 1531, does considerable violence to the bulwark of freedom guaranteed by the Free Exercise Clause.

It cannot be gainsaid that the judiciary is singularly ill-equipped to sit in judgment on military personnel regulations. In matters touching upon the exigencies of military affairs, the courts have wisely exercised the restraint and caution that befits the unelected branch of government. The wis-dom of Justice Jackson in *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), articulated in the shadow of the Korean Conflict, bears repeating today:

> The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters.

*Id.* at 94, 73 S.Ct. at 540. And this court has rightly been quick to decline invitations to engage in "judicial oversight of military policy decisions...." *Blevins v. Orr*, 721 F.2d 1419, 1423 (D.C.Cir.1983).

It is thus with circumspection that I have come to the view that the panel decision abdicates the judiciary's limited but important function in the extraordinarily delicate environment of military personnel. For notwithstanding the broad latitude rightly vested in those charged with defending the Nation's security, I am unable to agree that the needs of the military warrant vitiating the very liberties which the armed services have valiantly defended in the two centuries of the Nation's history.

To briefly review the facts giving rise to this case, it is undisputed that Dr. Goldman has served his country with distinction for fourteen years. It is also undisputed that during this period of exemplary service, Dr. Goldman followed uneventfully the dictates of his conscience by wearing the traditional yarmulke, a symbol of his faith whose roots are as deep and venerable as Western civilization itself. It is further undisputed that Dr. Goldman's wearing of the yarmulke resulted in no displacement of the military uniform in any manner whatever. Dr. Goldman never objected to wearing the entire military uniform as prescribed in the regulations. He simply chose, by reason of conscience, to wear in addition this symbol of a great faith from which Western morality and the Judaeo-Christian tradition have arisen. This is the

offense for which Dr. Goldman has been threatened with court-martial.

The military itself, at least until today, has assiduously and quite properly defended the right of the Nation's military personnel to engage in worship and other religious observances while on active duty and while on military bases. The military thus stands before the court with a long and admirable tradition of providing, at taxpayers' expense, chaplaincies and places of worship on military bases around the world. In the context of this tradition, it would be unthinkable for the military to promulgate a rule that forbade audible prayer while a serviceman is on active duty. Yet the military seeks to forbid an act that partakes of the religious significance of prayer and is equally unobtrusive. And, critically, the applicable military regulations permit the wearing of other unobtrusive religious regalia, such as undergarments or rings and bracelets bearing religious significance. Dr. Goldman's only "error" is that he wears a yarmulke.

The treatment of Dr. Goldman seems to me patently unconscionable. While courts quite properly defer to military expertise, we cannot abdicate our core constitutional responsibilities simply because a case arises in a military setting. As Justice Jackson also stated:

[W]e act in these matters not by authority of our competence but by force of our commissions. We cannot, because of modest estimates of our competence in ... specialties ... withhold the judgment that history authenticates as the function of this Court when liberty is infringed.

*West Virginia Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Chief Justice Marshall made the point even more succinctly: "That this court dares not usurp power is most true. That this court dares not shrink from its duty is no less true." 2 Burr's Trial at 444.

The panel opinion justifies this manifest infringement of First Amendment liberty by the military's need for uniform adherence to an *admittedly arbitrary* rule. In the military's view, accepted by the panel, providing exceptions to the rule would cause resentment in those servicemen for whose religious garb no exception can properly be made. The military's claim that flexibility generates resentment, whereas arbitrariness keeps the corps content, is utterly belied, however, by Dr. Goldman's own experience in serving his country. Not a scintilla of evidence in the record suggests that his wearing of a yarmulke caused any resentment whatever in others. The claim is contradicted by expert testimony, credited by the trial court, that making exceptions to accommodate deeply held religious beliefs would defuse rather than cause resentment. The claim is also at odds with common sense. Reasonable servicemen would more justly be annoyed with the mechanical enforcement of arbitrary rules that prevent the wearing of such unobtrusive symbols of religious faith while allowing others to wear religious rings and bracelets. The vice inherent in an arbitrary rule of this kind is that it does not offer to one who falls on the wrong side of the line any reason for the disparate treatment from which he or she suffers.

In interpreting the Free Exercise Clause, the Supreme Court has required those in authority to accommodate those who wish to exercise their religious liberties, unless the accommodation would prove unduly burdensome. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Slavish devotion to arbitrary rules is precisely the opposite of the spirit of accommodation which the Constitution, as interpreted by the Supreme Court, requires. Unless the military can offer firmer support for the counterintuitive proposition that accommodation of its dress code to deeply held religious beliefs breeds more resentment than simple arbitrariness, it should not be allowed to abrogate this long-standing interpretation of the Free Exercise Clause.

It is time to recall that the First Amendment means more than a strong and free press. It means more than protecting the right peaceably to assemble. It means more than preventing the National Govern-

ment from establishing a state religion. It means the inalienable right of all our people as free men and women to worship God. That is what this country is all about. Dr. Goldman has been required to render to Caesar far too much for far too little reason.

GINSBURG, Circuit Judge, dissenting from denial of suggestion to hear case en banc, in which Judge Scalia concurs:

The plaintiff in this case, S. Simcha Goldman, has long served his country as an Air Force officer with honor and devotion. A military commander has now declared intolerable the yarmulke Dr. Goldman has worn without incident throughout his several years of military service. At the least, the declaration suggests "callous indifference" to Dr. Goldman's religious faith, and it runs counter to "the best of our traditions" to "accommodate[ ] the public service to the[ ] spiritual needs [of our people]." *Zo-*

*rach v. Clauson,* 343 U.S. 306, 314, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952); *cf. Braunfeld v. Brown,* 366 U.S. 599, 616, 81 S.Ct. 1144, 1152, 6 L.Ed.2d 563 (1961) (Stewart, J., dissenting) (commenting on state law exposing Orthodox Jew to "cruel choice" between "his religious faith and his economic survival"). For the reasons indicated in Judge Starr's eloquent statement, I believe the court en banc should measure the command suddenly and lately championed by the military against the restraint imposed even on an armed forces commander by the Free Exercise Clause of the First Amendment.