**James L. DRONENBURG, Appellant,**

v.

**Vice Admiral Lando ZECH, Chief of Naval Personnel, et al.**

**No. 82–2304.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 15, 1984.

Stephen V. Bomse, Leonard Graff and Calvin Steinmetz, Washington, D.C., were on the suggestion for rehearing en banc filed by appellant.

Charles Lister and Margaret R. Alexander, Washington, D.C., were on the supporting petition for amicus curiae the American Civil Liberties Union of the National Capital Area.

Abby R. Rubenfeld, Evan Wolfson, Sarah Wunsch and Anne E. Simon, New York City, were on the joint brief of amicus curiae LAMBDA Legal Defense and Education Fund, Inc., et al., in support of the suggestion for rehearing en banc.

Before ROBINSON, Chief Judge, WRIGHT, TAMM, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK, SCALIA and STARR, Circuit Judges.

### ORDER

On Appellant's Suggestion for Rehearing *En Banc*

PER CURIAM.

The Suggestion for Rehearing *en banc* of Appellant, and the briefs *amici curiae* in support thereof, have been circulated to the full Court and a majority of the judges in regular active service have not voted in favor thereof. On consideration of the foregoing, it is

ORDERED, by the Court, *en banc*, that the aforesaid Suggestion for rehearing *en banc* is denied.

Opinion dissenting from denial of suggestion to hear case *en banc* filed by Chief Judge SPOTTSWOOD W. ROBINSON, III, and Circuit Judges WALD, MIKVA and HARRY T. EDWARDS.

Statements of Circuit Judges GINSBURG and STARR are attached. Also attached is a statement of Circuit Judge BORK, joined by Circuit Judge SCALIA.

SPOTTSWOOD W. ROBINSON, III, Chief Judge; WALD, MIKVA and HARRY T. EDWARDS, Circuit Judges, dissenting from denial of suggestion to hear case en banc:

We would vote to vacate the decision of the panel and to rehear the matter before the court *en banc*. This is a case of extreme importance in both a practical and a jurisprudential sense. For reasons discussed below, we do not think that *Doe v. Commonwealth's Attorney*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), *aff'g mem.* 403 F.Supp. 1199 (E.D.Va.1975), is controlling precedent here. Moreover, we are deeply troubled by the use of the panel's decision to air a revisionist view of constitutional jurisprudence.

The panel's extravagant exegesis on the constitutional right of privacy was wholly unnecessary to decide the case before the court. The *ratio decidendi* of the panel decision is fairly well stated in the last paragraph of the opinion. Jurists are free to state their personal views in a variety of forums, but the opinions of this court are not proper occasions to throw down gauntlets to the Supreme Court.

We find particularly inappropriate the panel's attempt to wipe away selected Supreme Court decisions in the name of judicial restraint. Regardless whether it is the proper role of lower federal courts to "create new constitutional rights," *Dronenburg v. Zech*, 741 F.2d 1388, at 1396 (D.C. Cir.1984), surely it is not their function to conduct a general spring cleaning of constitutional law. Judicial restraint begins at home.

We object most strongly, however, not to what the panel opinion does, but to what it fails to do. No matter what else the opinions of an intermediate court may properly include, certainly they must still apply federal law as articulated by the Supreme Court, and they must apply it in good faith. The decisions of that Court make clear that the constitutional right of privacy, whatever its genesis, is by now firmly established.

An intermediate judge may regret its presence, but he or she must apply it diligently. The panel opinion simply does not do so. Instead of conscientiously attempting to discern the principles underlying the Supreme Court's privacy decisions, the panel has in effect thrown up their hands and decided to confine those decisions to their facts. Such an approach to "interpretation" is as clear an abdication of judicial responsibility as would be a decision upholding all privacy claims the Supreme Court had not expressly rejected.

We find completely unconvincing the suggestion that *Doe v. Commonwealth's Attorney* controls this case. In *Doe*, the Supreme Court affirmed without opinion a three-judge district court's dismissal of a pre-enforcement constitutional challenge to a state criminal statute. Dronenburg, by contrast, challenges the constitutionality of his discharge pursuant to a military regulation not expressly authorized by statute. To hold Dronenburg's claims hostage to a one-word summary affirmance disregards the well-established principle that such a disposition by the Supreme Court decides the issue between the parties on the narrowest possible grounds. *See Mandel v. Bradley*, 432 U.S. 173, 176–77, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977) (per curiam); *Fusari v. Steinberg*, 419 U.S. 379, 391–92, 95 S.Ct. 533, 540–41, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). Moreover, the Court has clearly indicated that the *Doe* issue remains open. *See Carey v. Population Services International*, 431 U.S. 678, 688 n. 5, 694 n. 17, 97 S.Ct. 2010, 2018 n. 5, 2021 n. 17, 52 L.Ed.2d 675 (1977) ("[T]he Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults."); *New York v. Uplinger*, — U.S. —, 104 S.Ct. 2332, 81 L.Ed.2d 201 (1984) (dismissing certiorari as improvidently granted).

Even were we convinced by Judge Ginsburg's well-intentioned attempt to justify

the panel decision as a simple application of *Doe*, we would still vote to vacate the opinion. The opinion purports to speak for the court throughout the text, and we cannot indulge its twelve-page attack on the right of privacy as a harmless exposition of a personal viewpoint. *Cf. Dronenburg*, at 1396 n. 5.

In its eagerness to address larger issues, the panel fails even to apply seriously the basic requirement that the challenged regulation be "rationally related to a permissible end." There may be a rational basis for the Navy's policy of discharging all homosexuals, but the panel opinion plainly does not describe it. The dangers hypothesized by the panel provide patently inadequate justification for a ban on homosexuality in a Navy that includes personnel of both sexes and places no parallel ban on all types of heterosexual conduct. In effect, the Navy presumes that any homosexual conduct constitutes cause for discharge, but it treats problems arising from heterosexual relations on a case-by-case basis giving fair regard to the surrounding circumstances. This disparity in treatment calls for serious equal protection analysis.

We intimate no view as to whether the constitutional right of privacy encompasses a right to engage in homosexual conduct, whether military regulations warrant a relaxed standard of review, or whether the Navy policy challenged in this case is ultimately sustainable. What we do maintain is that the panel failed to resolve *any* of these compelling issues in a satisfactory

manner. Because we believe that the panel substituted its own doctrinal preferences for the constitutional principles established by the Supreme Court, we would vacate the decision of the panel and hear the case anew.

GINSBURG, Circuit Judge:

In challenging his discharge for engaging in homosexual acts in a Navy barracks, appellant argued that the conduct in question falls within the zone of constitutionally protected privacy. The panel held that, either because of the binding effect of the Supreme Court's summary affirmance in *Doe v. Commonwealth's Attorney*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), *summarily aff'g* 403 F.Supp. 1199 (E.D.Va.1975), or on the basis of principles set forth in other Supreme Court decisions, the Navy's determination could not be overturned. I agree with the first basis of that holding. *See Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975).

It is true that, in its discussion of the alternative basis, the panel opinion airs a good deal more than disposition of the appeal required.[1] Appellant and amici, in suggesting rehearing en banc, state grave concern that the panel opinion's "broad scope" creates correspondingly broad law for the circuit and, in so doing, sweeps away prior landmark holdings and divergent analyses.

The concern is unwarranted. No single panel is licensed to upset prior panel rul-

---

1. The dissenting opinion bends "judicial restraint" out of shape in suggesting that it is improper for lower federal courts ever to propose "spring cleaning" in the Supreme Court. In my view, lower court judges are not obliged to cede to the law reviews exclusive responsibility for indicating a need for, and proposing the direction of, "further enlightenment from Higher Authority." *See United States v. Martino*, 664 F.2d 860, 881 (2d Cir.1981) (Oakes, J., concurring). It is a view on which I have several times acted. *See, e.g., Mosrie v. Barry*, 718 F.2d 1151, 1162–63 (D.C.Cir.1983) (concurrence questioning consistency of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), with prior precedent on the concept of liberty sheltered by

due process); *Copper & Brass Fabricators Council, Inc. v. Department of the Treasury*, 679 F.2d 951, 953–55 (D.C.Cir.1982) (concurrence questioning cogency of Supreme Court precedent on "zone of interests" test for determining standing to sue); *see also American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 49 (D.C.Cir.1983) (Wald, J.) (citing, *inter alia, Copper & Brass*); *United States v. Ross*, 655 F.2d 1159, 1193–94 (D.C.Cir. 1981) (Wilkey, J., dissenting) (questioning seamlessness of web woven by *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and its precursors), *rev'd*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

ings, landmark or commonplace, or to impose its own philosophy on "the court." The panel in this case, I am confident, had no design to speak broadly and definitively *for the circuit.* I read the opinion's extended remarks on constitutional interpretation as a commentarial exposition of the opinion writer's viewpoint, a personal statement that does not carry or purport to carry the approbation of "the court."

Because I am of the view that the Supreme Court's disposition in *Doe* controls our judgment in this case, and that the panel has not tied the court to more than that, I vote against rehearing the case en banc.

Statement of Circuit Judge BORK, joined by Circuit Judge SCALIA.

BORK, Circuit Judge:

The dissent from the court's denial of the suggestion of rehearing en banc undertakes to chide the panel for criticizing the Supreme Court's right to privacy cases and for failing to extract discernible principle from those cases for application here. In rather extravagant terms the dissent accuses the panel of such sins as attempting to "wipe away" Supreme Court decisions, of "throw[ing] down gauntlets" to that Court, and "conduct[ing] a general spring cleaning of constitutional law." While rhetorical excess may be allowed to pass, we think that underlying it in this instance are serious misunderstandings that require a response.[1]

In the first place, the dissent overlooks both what we actually did and the necessity for it. The appellant cited a series of cases—*Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)—which he claimed established a privacy right to engage in homosexual conduct. It was, therefore, essential that the panel examine those decisions to determine whether they did enunciate a principle so broad. We quoted the pivotal language in each case and concluded that no principle had been articulated that enabled us to determine whether appellant's case fell within or without that principle. In these circumstances, we thought it improper for a court of appeals to create a new constitutional right of the sort appellant sought. That much is certainly straightforward exegesis. The dissenters appear to be exercised, however, because the conclusion that we could not discover a unifying principle underlying these cases seems to them an implicit criticism of the Supreme Court's performance in this area. So it may be, but, if so, the implied assessment was inevitable. It is difficult to know how to reach the conclusion that no principle is discernible in decisions without seeming to criticize those decisions. Had our real purpose been to propose, as the dissent says, that those cases be eliminated from constitutional law, we would have engaged in a much more extensive analysis than we undertook. As it

---

[1]. The dissent also objects to our reliance on the Supreme Court's summary affirmance, in *Doe v. Commonwealth's Attorney for Richmond,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), of a district court judgment that upheld a state statute making it a criminal offense to engage in private consensual homosexual conduct. Since the Navy's regulation in this case is if anything a less drastic restriction on the liberty of homosexuals than the statute in *Doe,* it must follow—on any conceivable rationale that could be given for *Doe*—that the regulation is constitutional. The dissent tries to evade this straightforward analysis by relying on the Court's suggestion in *Carey v. Population Services International,* 431 U.S. 678, 694 n. 17, 97 S.Ct. 2010, 2021 n. 17, 52 L.Ed.2d 675 (1977), that the *Doe* issue remains open. It is true in one sense that the issue remains open—a summary affirmance does not foreclose full consideration of the issue by the Supreme Court. That is all the language from *Carey* suggests. But it was settled in *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975), that summary affirmances by the Supreme Court *are* fully binding on the lower federal courts, and *Carey* does not even hint otherwise. Hence *Carey* cannot justify the dissent's refusal to follow *Doe.*

was, we said no more than we thought required by the appellant's argument.

Unless the dissent believes that we are obliged to dissemble, enunciating a unifying principle where we think none exists, then its only criticism must be with the adequacy of our analysis rather than our bona fides. That criticism, we may note, would be a good deal more persuasive if the dissent set forth (as it conspicuously did not) the unifying principle that we so obviously overlooked.

Contrary to the dissent's assertion, moreover, the panel opinion explained the rational basis for the Navy's policy with respect to overt homosexual conduct. Slip op. at 20–21. We cannot take seriously the dissent's suggestion that the Navy may be constitutionally required to treat heterosexual conduct and homosexual conduct as either morally equivalent or as posing equal dangers to the Navy's mission. Relativism in these matters may or may not be an arguable moral stance, a point that we as a court of appeals are not required to address, but moral relativism is hardly a constitutional command, nor is it, we are certain, the moral stance of a large majority of naval personnel.

Though we think that our analysis of the privacy cases was both required and accurate, we think it worth addressing the rather curious version of the duties of courts of appeals that the dissent urges. It is certainly refreshing to see "judicial restraint" advocated with such ardor, but we think the dissent misapprehends the concept. "Judicial restraint" is shorthand for the philosophy that courts ought not to invade the domain the Constitution marks out for democratic rather than judicial governance. That philosophy does not even remotely suggest that a court may not offer criticism of concepts employed by a superior court. Some very eminent jurists have done just that and have thereby contributed to the growth and rationality of legal doctrine. *See, e.g., Salerno v. American League of Professional Baseball Clubs,* 429 F.2d 1003, 1005 (2d Cir.1970) (Friendly, J.) (criticizing Supreme Court cases holding professional baseball exempt from federal antitrust laws); *United States v. Dennis,* 183 F.2d 201, 207–212 (2d Cir.1950) (L. Hand, J.), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (criticizing Supreme Court's explication and application of the "clear and present danger" test, and proposing a reformulation of that test which the Court proceeded to approve, 341 U.S. at 510, 71 S.Ct. at 867); *United States v. Roth,* 237 F.2d 796, 801 (2d Cir.1956) (Frank, J., concurring) (criticizing the Supreme Court's decisions affirming the constitutionality of an obscenity statute as overlooking a variety of historical, sociological, and psychological grounds for calling the constitutionality of the statute into question). *See also* Arnold, *Judge Jerome Frank,* 24 U.Chi.L.Rev. 633, 633 (1957) ("When forced by *stare decisis* to reach what he considered an undesirable result [Judge Frank] would write a concurring opinion analyzing the problem and plainly suggesting that either the Supreme Court or Congress do something about it. It was a unique and useful technique whereby a lower court judge could pay allegiance to precedent and at the same time encourage the processes of change."). None of the judges mentioned could be characterized as lacking judicial restraint.

The judicial hierarchy is not, as the dissent seems to suppose, properly modelled on the military hierarchy in which orders are not only carried out but accepted without any expression of doubt. Law is an intellectual system and courts are not required to approve uncritically any idea advanced by a constitutionally superior court. Lower court judges owe the Supreme Court obedience, not unquestioning approval. Without obedience by lower courts, the law would become chaos. Without reasoned criticism, the law would become less rational and responsive to difficulties. The fact that criticism may come from within the judicial system will often make it more valuable rather than less. We say this,

however, only to clarify the question of the proper relationship between inferior and superior courts and more for its application to future cases than to this one. In the present case, as we have said, any criticism the dissent may believe it detects in the panel opinion was at most implicit and inseparable from the analysis required of us.

STARR, Circuit Judge:

It is not the province of the lower federal courts to chide the Supreme Court for decisions that, in the considered view of federal judges, may be ill-reasoned or misguided. It is our bounden duty, whatever our own views of the matter may be, to follow in good faith applicable precedent, no matter how disagreeable that precedent might be.

But in my judgment, the panel in its opinion for the court has simply not strayed from this elementary judicial obligation. To the contrary, the panel's moving beyond *Doe v. Commonwealth's Attorney,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), to examine more broadly the Supreme Court's teachings on the right of privacy, beginning with *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), seems not only appropriate but necessary to treat dispassionately and fairly the constitutional claims advanced by Mr. Dronenburg.

And I am satisfied that the panel has rightly analyzed the applicable materials. It simply cannot seriously be maintained under existing case law that the right of privacy extends beyond such traditionally protected areas as the home or beyond traditional relationships—the relationship of husband and wife, or parents to children, or other close relationships, including decisions in matters of childbearing—or that the analytical doctrines enunciated by the Court lead to the conclusion that government may not regulate sexually intimate consensual relationships. In our federal system, governments indisputably have done so for two centuries in a variety of ways that seem to have gone, until more recent times, utterly unquestioned. While bright lines in the law of privacy are difficult for the most earnestly conscientious judges to discern, the teachings and doctrines which we thus far have to guide our way in this troubling area suggest that the result here is entirely correct—a result that can be reached without resort to a single dissenting opinion from one or more members of the Supreme Court concerned by the legitimacy of creating judge-made rights, as opposed to rights clearly and broadly enumerated at the Founding. *Goldman v. Secretary of Defense,* 739 F.2d 657 (D.C.Cir.1984) (Starr, J., dissenting from denial of suggestion to hear case *en banc*).