NEW YORK *v.* UPLINGER ET AL.

No. 82–1724.   Argued January 18, 1984—Decided May 30, 1984

*Richard J. Arcara* argued the cause for petitioner.   With him on the briefs were *John J. DeFranks* and *Louis A. Haremski.*

*William H. Gardner* argued the cause for respondents. With him on the brief for respondent Uplinger was *Thomas F. Coleman.*   *Rose H. Sconiers* and *Joseph B. Mistrett* filed a brief for respondent Butler.*

---

*Briefs of *amici curiae* urging affirmance were filed for the American Association for Personal Privacy et al. by *Melvin L. Wulf* and *David A. J. Richards;* for the American Civil Liberties Union et al. by *Steven R. Shapiro, Burt Neuborne,* and *Charles S. Sims;* for the American Psychological Association et al. by *Margaret Farrell Ewing, Bruce J. Ennis,* and *Donald N. Bersoff;* for the Committee on Sex and Law of the Association of the Bar of the City of New York et al. by *Mark H. Leeds, Michael A. Bamberger, John H. Doyle III,* and *Edward M. Shaw;* and for the Lambda Legal Defense and Education Fund, Inc., by *Mary C. Dunlap, Abby R. Rubenfeld,* and *Nan D. Hunter.*

Briefs of *amici curiae* were filed for the Attorney General of the State of New York by *Robert Abrams,* Attorney General, *pro se,* and *Rosemarie*

PER CURIAM.

We granted certiorari, 464 U. S. 812 (1983), to review a decision of the New York Court of Appeals concerning N. Y. Penal Law § 240.35(3) (McKinney 1980), which prohibits loitering "in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature." Respondents, charged with violating the statute, challenged its constitutionality and the Court of Appeals sustained their claim. 58 N. Y. 2d 936, 447 N. E. 2d 62 (1983). The court concluded that § 240.35(3) is "a companion statute to the consensual sodomy statute . . . which criminalized acts of deviate sexual intercourse between consenting adults" and noted that it had previously held the latter statute unconstitutional in *People v. Onofre,* 51 N. Y. 2d 476, 415 N. E. 2d 936 (1980), which we declined to review, see 451 U. S. 987 (1981). 58 N. Y. 2d, at 937–938, 447 N. E. 2d, at 62–63. Construing the loitering statute as intended "to punish conduct anticipatory to the act of consensual sodomy," the Court of Appeals reasoned that "[i]nasmuch as the conduct ultimately contemplated by the loitering statute may not be deemed criminal, we perceive no basis upon which the State may continue to punish loitering for that purpose." *Id.,* at 938, 447 N. E. 2d, at 63.

Petitioner challenges the decision of the Court of Appeals on the ground that the loitering statute is a valid exercise of the State's power to control public order.[1] Respondents, on

---

*Rhodes, Lawrence S. Kahn,* and *Jane Levine,* Assistant Attorneys General; for the Center for Constitutional Rights et al. by *Rhonda Copelon* and *Anne E. Simon;* and for the National Association of Business Councils et al. by *Laurence R. Sperber* and *Jay M. Kohorn.*

[1] Petitioner, the State of New York, is represented in this Court by the District Attorney for Erie County, N. Y., the prosecutor who brought the criminal charges against respondents. After certiorari was granted, however, the Attorney General of the State of New York filed a brief as *amicus curiae,* urging us to conclude that the loitering statute as applied in this case violates respondents' federal constitutional rights to freedom of

the other hand, defend the decision by arguing that the statute is unconstitutionally vague and overbroad on its face and that, as applied, it violates their First Amendment, equal protection, and due process rights. We decline to address these arguments, however, because examination of the case, after full briefing and oral argument, has convinced us that the writ of certiorari was improvidently granted. See *The Monrosa* v. *Carbon Black Export, Inc.*, 359 U. S. 180, 184 (1959).

As the diverse arguments presented in the briefs have demonstrated, the opinion of the Court of Appeals is fairly subject to varying interpretations, leaving us uncertain as to the precise federal constitutional issue the court decided.[2] Moreover, whatever the constitutional basis of the Court of

---

speech and privacy but suggesting that the court below erred in striking down the statute on its face.

The allocation of authority among state officers to represent the State before this Court is, of course, wholly a matter of state concern. As our Rule 36.4 indicates, however, in addressing the constitutionality of a statute with statewide application we consider highly relevant the views of the State's chief law enforcement official. The fundamental conflict in the positions taken by petitioner and the New York Attorney General, a circumstance which was "not manifest or fully apprehended at the time certiorari was granted," *Ferguson* v. *Moore-McCormack Lines*, 352 U. S. 521, 559 (1957) (Harlan, J., concurring and dissenting), provides a strong additional reason for our conclusion that the grant of certiorari was improvident. See *The Monrosa* v. *Carbon Black Export, Inc.*, 359 U. S. 180, 184 (1959).

[2] Under one fair reading of the opinion below, we may not even have jurisdiction to review the Court of Appeals' decision. See *Dorchy* v. *Kansas*, 264 U. S. 286, 290 (1924). The New York court determined, as a matter of state law, that the statute prohibits speech, whether harassing or not, anticipatory to consensual sodomy. Accordingly, the court's holding might be based on a conclusion that as a matter of state law, the statute at issue here was intended only to provide an additional means of enforcing the statute struck down in *Onofre* and therefore was not severable from that statute. See 58 N. Y. 2d, at 937–938, 447 N. E. 2d, at 62–63 ("[I]t is apparent from the wording of this statute that it was aimed at proscribing overtures, not necessarily bothersome to the recipient, leading to what was, at the time the law was enacted, an illegal act").

Appeals' decision, it was clearly premised on the court's earlier decision in *People* v. *Onofre, supra,* and for that reason a meaningful evaluation of the decision below would entail consideration of the questions decided in that case. Petitioner does not, however, challenge the decision of the New York Court of Appeals in that case. See Brief for Petitioner 2. Cf. Pet. for Cert. 6, n. 1.

Under these circumstances, we are persuaded that this case provides an inappropriate vehicle for resolving the important constitutional issues raised by the parties. We therefore dismiss the writ of certiorari as improvidently granted.

*It is so ordered.*

JUSTICE STEVENS, concurring.

Although the origins of the Rule of Four are somewhat obscure,[1] its administration during the past 60 years has undergone a number of changes.[2] Even though our decision today makes no change in the Rule, I regard it as sufficiently significant to warrant these additional comments.

I first note that I agree with the reasons set forth in the *per curiam* opinion for not deciding this case. I would add (1) that the major reasons were apparent when the certiorari petition was filed, and (2) that our jurisdiction over this case is problematic at best because the most straightforward interpretation of the New York Court of Appeals' opinion is that the statutory provision at issue in this case is not severable, as a matter of state law, from the provision invalidated in *People* v. *Onofre,* 51 N. Y. 2d 476, 415 N. E. 2d 936 (1980), cert. denied, 451 U. S. 987 (1981). The Court, quite correctly in my opinion, therefore declines to address the merits.

Four Members of the Court believe, however, that the merits "should be addressed." *Post,* at 252. They do not,

---

[1] See Leiman, The Rule of Four, 57 Colum. L. Rev. 975, 981–982 (1957).

[2] See Stevens, The Life Span of a Judge-Made Rule, 58 N. Y. U. L. Rev. 1, 11–14 (1983).

however, address the merits themselves. Cf. *Colorado* v. *Nunez*, 465 U. S. 324 (1984) (concurring opinion). Nor do they attempt to refute the sound reasons offered by the majority for dismissing the writ as improvidently granted. As long as we adhere to the Rule of Four, four Justices have the power to require that a case be briefed, argued, and considered at a postargument conference. Why, then, should they not also have the power to command that its merits be decided by the Court?

The difference in the character of the decision to hear a case and the decision to decide it justifies a difference in the way the decision should be made. As long as we act prudently in selecting cases for review,[3] there is relatively little to be lost, and a great deal to be gained, by permitting four Justices who are convinced that a case should be heard to have it placed on the calendar for argument. It might be suggested that the case must be decided unless there has been an intervening development that justifies a dismissal. See generally *Rice* v. *Sioux City Cemetery*, 349 U. S. 70 (1955). I am now persuaded, however, that there is *always* an important intervening development that may be decisive. The Members of the Court have always considered a case more carefully after full briefing and argument on the merits than they could at the time of the certiorari conference, when almost 100 petitions must be considered each week.[4] Nevertheless, once a case has been briefed, argued, and studied in chambers, sound principles of judicial economy normally

---

[3] We have granted review in approximately 50 fewer cases thus far this Term than we had at the corresponding point in the October 1981 Term.

[4] A particularly dramatic example of the contrast between the quality of decisionmaking after argument as compared with that prior to studying the merits is provided by the contrast between the virtually unanimous decision to deny the application for a stay in *Palmore* v. *Sidoti*, 460 U. S. 1018 (1983), and the unanimous decision to reverse the decision below on the merits, 466 U. S. 429 (1984).

outweigh most reasons advanced for dismissing a case. Indeed, in many cases, the majority may remain convinced that the case does not present a question of general significance warranting this Court's review, but nevertheless proceed to decide the case on the merits because there is no strong countervailing reason to dismiss after the large investment of resources by the parties and the Court.

A decision on the merits does, of course, have serious consequences, particularly when a constitutional issue is raised, and most especially when the constitutional issue presents questions of first impression. The decision to decide a constitutional question may be the most momentous decision that can be made in a case. Fundamental principles of constitutional adjudication counsel against premature consideration of constitutional questions and demand that such questions be presented in a context conducive to the most searching analysis possible. See generally *Ashwander* v. *TVA*, 297 U. S. 288, 341 (1936) (Brandeis, J., concurring). The policy of judicial restraint is most salient in this Court, given its role as the ultimate expositor of the meaning of the Constitution, and "perhaps the most effective implement for making the policy effective has been the certiorari jurisdiction conferred upon this Court by Congress." *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 568 (1947). If a majority is convinced after studying the case that its posture, record, or presentation of issues makes it an unwise vehicle for exercising the "gravest and most delicate" function that this Court is called upon to perform, the Rule of Four should not reach so far as to compel the majority to decide the case.

In conclusion, the Rule of Four is a valuable, though not immutable, device for deciding when a case must be argued, but its force is largely spent once the case has been heard. At that point, a more fully informed majority of the Court must decide whether some countervailing principle outweighs the interest in judicial economy in deciding the case.

JUSTICE WHITE, with whom THE CHIEF JUSTICE, JUSTICE REHNQUIST, and JUSTICE O'CONNOR join, dissenting.

As I see it, the New York statute was invalidated on federal constitutional grounds, and the merits of that decision are properly before us and should be addressed. Dismissing this case as improvidently granted is not the proper course.