**Michael HARDWICK, et al.,
Plaintiffs-Appellants,**

v.

**Michael BOWERS, et al.,
Defendants-Appellees.**

No. 83–8378.

United States Court of Appeals,
Eleventh Circuit.

May 21, 1985.

Rehearing and Rehearing En Banc
Denied June 13, 1985.

Kathleen L. Wilde, Atlanta, Ga., for plaintiffs-appellants.

George M. Weaver, Asst. Attys. Gen., Atlanta, Ga., for Bowers.

H. Allen Moye, Asst. Dist. Atty., Atlanta, Ga., for Slaton.

Marva Jones Brooks, George R. Ference, Atlanta, Ga., for Napper.

Nan D. Hunter, New York City, for ACLU.

**1204**

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

The Atlanta Police arrested Michael Hardwick on August 3, 1982, because he had committed the crime of sodomy with a consenting male adult in the bedroom of his own home. Charges were brought as a result of the arrest and after a hearing in the Municipal Court of Atlanta Hardwick was bound over to the Superior Court. At that point the District Attorney's office decided not to present the case to the grand jury unless further evidence developed.

Hardwick then filed this suit asking the federal district court to declare unconstitutional the Georgia statute that criminalizes sodomy, O.C.G.A. § 16–6–2 (1984).[1] Hardwick alleged in his complaint that he is a practicing homosexual who regularly engages in private homosexual acts and will do so in the future. He was joined in bringing the suit by John and Mary Doe, a married couple acquainted with Hardwick. They claimed that they desired to engage in sexual activity proscribed by the statute but had been "chilled and deterred" by the existence of the statute and the recent arrest of Hardwick.

The complaint named as defendants Michael Bowers, Attorney General of Georgia; Lewis Slaton, District Attorney for Fulton County; and George Napper, Public Safety Commissioner of Atlanta. All three filed a motion to dismiss for failure to state a claim upon which relief could be granted.

The district court granted the motion. It ruled that the Does did not have standing to bring suit and that Hardwick, although he possessed standing, had no legal claim in light of the Supreme Court's summary affirmance of a three-judge district court in *Doe v. Commonwealth's Attorney for the City of Richmond*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), *aff'g*, 403 F.Supp. 1199 (E.D.Va.1975). All three plaintiffs have appealed the dismissal.

## I. STANDING

A federal court may not hear a legal claim unless it arises from a genuine case or controversy. A case or controversy requires a plaintiff with a personal stake in the outcome sufficient to assure an adversarial presentation of the case. Hence, a plaintiff must demonstrate that he or she has suffered an actual or threatened injury caused by the challenged conduct of the defendant. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *American Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce, Inc.*, 698 F.2d 1098 (11th Cir.1983).[2]

The State is not currently prosecuting Hardwick or the Does under the sodomy statute. The Does have never been arrested under the statute and Hardwick cannot rely solely on his past arrest to

---

**1.** Section 16–6–2 provides as follows:

(a) A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another. A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the other person.

(b) A person convicted of the offense of sodomy shall be punished by imprisonment for not less than one nor more than 20 years. A person convicted of the offense of aggravated sodomy shall be punished by imprisonment for life or by imprisonment for not less than one nor more than 20 years.

**2.** The defendants do not dispute that the enforcement of this statute causes the injury alleged by Hardwick and the Does or that the requested declaratory judgment would likely redress their injuries. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Nor do they suggest any prudential reasons for this court to refuse to hear the case. See *Warth v. Seldin*, 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975); *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). But see note 3, infra.

confer upon him standing to challenge the constitutionality of the statute. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). This suit, therefore, presents an anticipatory challenge to the statute. The standing of each of the plaintiffs will depend on whether the threat of prosecution under this statute is real and immediate or "imaginary" and "speculative." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).

A court can estimate the likelihood of prosecution by examining the identity and interests of each of the parties. The interest of the State in enforcing the statute, along with past enforcement patterns, provides one indication; the interest of the plaintiff in engaging in the prohibited activity provides another. *International Society for Krishna Consciousness v. Eaves,* 601 F.2d 809, 818 (5th Cir.1979).[3]

█ The interest of the State in prosecuting these plaintiffs need not take the form of a specific threat of prosecution against them individually, although such a threat will often suffice to give a plaintiff standing. *Steffel v. Thompson, supra.* A general threat of prosecution against an identifiable group may confer standing in some instances. For instance, in *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 508, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972), the Court ruled that a group of bulk cargo vessel owners had standing to challenge a state law, about to go into effect, mandating certain sewage disposal methods for cargo vessels. Even though the State had threatened no particular owner with prosecution under the statute, it announced that it would prosecute

violators as soon as the statute became effective.

█ The past enforcement of the statute against Hardwick is especially significant in measuring the State's intentions of prosecuting him in the future. Hardwick alleges that his arrest resulted from a situation in which he regularly places himself, one that will recur often in the future. As this Court recognized in *Cuidadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners,* 622 F.2d 807, 820 (5th Cir.1980), *cert. denied,* 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981), evidence of past injuries inflicted by the State raises the strong inference that future injuries will appear. A past enforcement effort often will confirm the reasonableness of a plaintiff's subjective fear of prosecution. This is particularly true in Hardwick's case if one accepts as true[4] his allegation that the Atlanta Police enforce the statute in a way that places all practicing homosexuals in imminent danger of arrest.

A second indicator of threatened harm to these plaintiffs comes from the nature of their interest in violating the statute. Each of them claims that their normal course of activity will lead them to violate the statute, completely apart from their desire to have it invalidated. Hardwick's status as a homosexual adds special credence to his claim. *See International Society for Krishna Consciousness v. Eaves, supra,* at 819. While a plaintiff hoping only to challenge a statute might overestimate his or her willingness to risk actual prosecution, a plaintiff who genuinely desires to engage in conduct regardless of its legal status presents a court with a more plausible threat of future prosecution.

---

**3.** The court in *ISKCON v. Eaves* concluded that the plaintiff's interest in violating the statute determined the Article III component of standing, while the State's enforcement interest bore relevance only to the "prudential" aspect of the standing doctrine. This distinction does not influence our analysis of the standing of these plaintiffs, for we consider standing in both the constitutional and prudential senses.

**4.** Because Hardwick appeals from a dismissal for failure to state a claim upon which relief can be granted, the allegations of his complaint must be taken as true. The same holds true for the Does, whose complaint was dismissed for lack of subject matter jurisdiction before the defendants filed any answer.

In some cases, the authentic interest of the plaintiff in engaging in the prohibited conduct can establish standing even though the only threat of enforcement by the State comes from the very existence of the statute. The Supreme Court in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 302–03, 99 S.Ct. 2301, 2310–11, 60 L.Ed.2d 895 (1979), held that a union could challenge a state law prohibiting deceptive advertising relating to farm products because the union planned to sponsor advertising campaigns in the future and the State had not disavowed any intention of enforcing the statute. The risk that the State would detect the inadvertent use of an inaccuracy in an advertisement by the union and would prosecute for that offense was a threat immediate enough to give the union standing. *See also Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (doctor who consulted with pregnant women regarding birth control in violation of law was "one of those against whom these criminal statutes directly operate"); *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (teacher challenging statute prohibiting teaching of evolution). A plaintiff has a stronger claim for standing if, in addition to the authenticity of the interest, he or she is best suited to challenge a law. *Atlanta Gas Light Company v. United States Department of Energy*, 666 F.2d 1359, 1364 n. 7 (11th Cir.), *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 78 (1982).

■ The past arrest of Hardwick, combined with the continuing resolve on the part of the State to enforce the sodomy statute against homosexuals and the authenticity of Hardwick's desire to engage in the proscribed activity in the future, leads us to agree with the district court that Hardwick has standing to bring this lawsuit. The issue of the Does' standing is less straightforward. They have not been arrested or threatened with arrest for sodomy. At first glance, they appear to be in the same position as several of the plaintiffs in *Younger v. Harris*, 401 U.S. 37, 40–42, 91 S.Ct. 746, 748–749, 27 L.Ed.2d 669 (1971), who intervened in a federal suit filed by an acquaintance who had been prosecuted by the state under a criminal syndicalism law. The intervenors, teachers, alleged that the existence of the statute and the prosecution of Harris had "inhibited" their teaching and had left them "uncertain" as to their legal rights. The Court ruled that the intervenors had no standing.

The Does argue that they do not stand in precisely the same position as the intervenors in *Younger* because the defendants in that case brought their appeal after the entry of final judgment in the three-judge district court. The intervenors had been given an opportunity to present evidence of a realistic probability of prosecution apart from their unsupported fears; they had presented no such evidence. The Does, on the other hand, have not had an opportunity to engage in discovery and to present evidence relating to the enforcement of this statute against married couples.

The lack of evidence related to threat of injury should in many cases lead a court to permit discovery and to make factual findings before dismissing a suit for lack of standing. *Cf. Chancery Clerk of Chickasaw County, Mississippi v. Wallace*, 646 F.2d 151, 159 (5th Cir. Unit A 1981); *City of Waco v. Environmental Protection Agency*, 620 F.2d 84 (5th Cir.1980). The Does, however, did not allege in their complaint that they faced a serious risk of prosecution. They stated only that the existence of the statute along with the arrest of Hardwick had "chilled and deterred" them and had "interfered" with decisions regarding their private lives. In resisting the defendants' motion to dismiss for lack of standing, the Does never claimed membership in a group especially likely to be prosecuted. Throughout the proceedings in the district court, including the motion for reconsideration of the judgment, the Does claimed that the existence of the statute, its literal applicability to their situation, and the refusal of the State to disavow any intent to prosecute them combined to give them standing. At no time before this appeal did they request discovery or an

evidentiary hearing to determine the likelihood of future prosecution; they filed no affidavit to establish any realistic threat. Under these circumstances, *Younger v. Harris, supra*, controls and we affirm the district court's dismissal of the Does' complaint for lack of standing. *Cf. Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

## II. THE EFFECT OF *DOE V. COMMONWEALTH'S ATTORNEY*

In 1975 a three-judge district court in Virginia upheld the constitutionality of that state's sodomy law, *Doe v. Commonwealth's Attorney for City of Richmond*, 403 F.Supp. 1199 (E.D.Va.1975). The plaintiffs, homosexuals who had neither been arrested nor threatened with prosecution, argued that the statute violated their rights to due process, freedom of expression, privacy, and freedom from cruel and unusual punishment. They appealed the adverse decision of the district court to the Supreme Court. The Court summarily affirmed the judgment. 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). The district court in this case dismissed Hardwick's complaint for failure to state a claim upon which relief could be granted, relying exclusively on *Doe.*

### A. The Bounds of the Original Holding in *Doe*

A summary affirmance of the Supreme Court has binding precedential ef-

fect. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Yet because the Court disposes of the case without explaining its reasons, the holding must be carefully limited. A summary affirmance represents an approval by the Supreme Court of the judgment below but should not be taken as an endorsement of the reasoning of the lower court. *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977); *Fusari v. Steinberg*, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975).

Despite this general admonition, finding the precise limits of a summary affirmance has proven to be no easy task. Courts seeking to identify the issues governed by a summary affirmance should examine the issues necessarily decided in reaching the result as well as the issues mentioned in the jurisdictional statement. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 181–83, 99 S.Ct. 983, 988–89, 59 L.Ed.2d 230 (1979). These two criteria conflict in this case. The jurisdictional statement in *Doe* presented the question of whether Virginia's sodomy statute violated constitutional rights to privacy, due process, and equal protection under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. Yet the Court could have approved of the result reached by the district court without addressing those constitutional issues because the plaintiffs in *Doe* plainly lacked standing to sue.[5] Hence, the

---

5. The plaintiffs there had not been arrested for violation of the statute, nor did they present any evidence of threatened prosecutions or past prosecutions under the statute. At most, the plaintiffs had a "generalized grievance" regarding the statute and its enforcement that was insufficient to allow a federal court to reach the merits of their claim. *Cf. Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961).

The fact that the Supreme Court in *Doe* affirmed a dismissal on the merits below rather than vacating the judgment with instructions to dismiss for lack of subject matter jurisdiction does not demonstrate that the court reached the merits of the case. While an appellate court that finds lack of standing normally will vacate

the judgment and remand for dismissal, the Supreme Court has not uniformly followed that course. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (reversing decision on the merits due to lack of Article III standing); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (same). Moreover, the Court would be even less likely to vacate the judgment and remand for dismissal when a case presents prudential standing problems which, unlike constitutional standing requirements, do not bear on the very power of the court to hear the case. *Warth v. Seldin*, 422 U.S. 490, 499–501, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975) ("reluctance to exert judicial power" due to prudential standing problems may be overcome by countervailing factors). The facts as described by the district court in *Doe* presented what appeared to be non-constitutional standing

constitutional issues presented in *Doe* were issues listed in the jurisdictional statement but not necessary to the disposition of that case.

Several reasons lead us to conclude that the mention of constitutional issues in the jurisdictional statement in *Doe* does not override the clear availability of a narrower ground of decision. To begin with, the Supreme Court has generally referred to the two indicia, necessity to the decision and presentation in the jurisdictional statement, as if both were necessary. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 499, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981) (summary affirmance binding as to "precise issues presented *and* necessarily decided") (emphasis supplied); *Illinois State Board of Elections v. Socialist Workers Party, supra*, 440 U.S. at 182–83, 99 S.Ct. at 989–90; *Mandel v. Bradley, supra*, 432 U.S. at 176, 97 S.Ct. at 2240; *see also Cherry v. Steiner*, 716 F.2d 687, 690 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1719, 80 L.Ed.2d 190 (1984). Furthermore, if the jurisdictional statement could expand a summary affirmance beyond the scope of issues necessarily decided, it would give the litigants considerable control over the scope of summary dispositions. While a jurisdictional statement prevents speculation as to what issues the Court actually considered, *see*

*Howell v. Jones*, 516 F.2d 53, 56 (5th Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976), it is only a tool in determining the ultimate question: the most narrow plausible rationale for the summary decision.

■ Lower courts may rely upon the jurisdictional statement as an outside limit on the precential scope of a summary decision but Supreme Court precedent does not allow us to consider the jurisdictional statement as both a minimum and a maximum formulation of the issues decided. Where, as in the *Doe* case, the facts of the case plainly reveal a basis for the lower court's decision more narrow than the issues listed in the jurisdictional statement, a lower court should presume that the Supreme Court decided the case on that narrow ground. We therefore construe *Doe* as an affirmance based on the plaintiffs' lack of standing and not controlling in this case.

### B. Doctrinal Developments after *Doe*

■ Even if *Doe* had been resolved on the constitutional grounds now asserted by Hardwick,[6] the Supreme Court has indicated since that time that the constitutionality of statutes such as the one in question here is not governed by *Doe* but, rather, remains an open question. Since a summary disposition binds lower courts only until

---

problems. Cf. *Schlesinger v. Reservists Committee to Stop the War, supra; Poe v. Ullman, supra*.

Similar reasoning applies to appellate jurisdiction. The special jurisdictional provisions of 28 U.S.C.A. § 1253 (1966) confer appellate jurisdiction on the Supreme Court only when a three-judge court was properly convened. Therefore the Supreme Court will often dismiss the appeal and vacate the judgment below if the three-judge court dismissed the case due to a plaintiff's lack of constitutional standing. *Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974). However, the Supreme Court has not held that it lacks appellate jurisdiction over an appeal from a dismissal on the merits by a three-judge court where the plaintiff lacks standing. Moreover, a three-judge court may be properly convened even when it could possibly decide the case on non-constitutional grounds. *Alexander v. Fioto*, 430 U.S. 634, 97 S.Ct. 1345, 51 L.Ed.2d 694 (1977); *Philbrook v. Glodgett*, 421 U.S. 707, 712, 95 S.Ct. 1893, 1897, 44 L.Ed.2d 525 (1975).

The Supreme Court could therefore affirm a dismissal by a three-judge court if prudential standing problems hindered the court from hearing the merits; dismissal for lack of appellate jurisdiction would not be necessary.

The court in *Poe v. Ullman, supra*, dismissed the appeal rather than affirming the dismissal below because the plaintiffs there appealed from state court pursuant to 28 U.S.C.A. § 1257 (1966). The Supreme Court refused to hear the merits because of prudential considerations binding only on federal courts. Since the state court had not faced the same bar to adjudication on the merits, dismissal of the appeal was the proper disposition.

**6.** The *Doe* affirmance could not control all of Hardwick's legal claims. He alleges that the Georgia statute violates his First Amendment freedom of association, a claim not addressed by the jurisdictional statement or the district court opinion in *Doe*.

the Supreme Court indicates otherwise, *Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975), developments subsequent to the *Doe* decision undermine whatever controlling weight it once may have possessed.

Doctrinal developments need not take the form of an outright reversal of the earlier case. The Supreme Court may indicate its willingness to reverse or reconsider a prior opinion with such clarity that a lower court may properly refuse to follow what appears to be binding precedent. *Indianapolis Airport Authority v. American Airlines, Inc.*, 733 F.2d 1262 (7th Cir. 1984); *Browder v. Gayle*, 142 F.Supp. 707 (M.D.Ala.) (three-judge court), *aff'd per curiam*, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956). Even less clear-cut expressions by the Supreme Court can erode an earlier summary disposition because summary actions by the Court do not carry the full precedential weight of a decision announced in a written opinion after consideration of briefs and oral argument. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 500, 101 S.Ct. 2882, 2888, 69 L.Ed.2d 800 (1981); *Edelman v. Jordan*, 415 U.S. 651, 671, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974). The Court could suggest that a legal issue once thought to be settled by a summary action should now be treated as an open question, and it could do so without directly mentioning the earlier case. At that point, lower courts could appropriately reach their own conclusions on the merits of the issue. *Lecates v. Justice of the Peace Court No. 4 of Delaware*, 637 F.2d 898 (3d Cir.1980).

At least two actions by the Supreme Court demonstrate that it now considers the constitutional issues purportedly determined in *Doe* to be unsettled. The first indication came in the decision in *Carey v. Population Services*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The Court there held, *inter alia*, that a state could not prevent the sale of non-prescription contraceptives to adults by persons other than licensed pharmacists. Justice Powell stated in a concurring opinion that the majority had employed an unnecessarily broad principle that subjected all state regulation affecting "adult sexual relations" or "personal decisions in matters of sex" to the strictest standard of judicial review. The majority responded in footnote 5 that its holding only applied to state regulation that burdens an individual's right to decide to prevent conception by substantially limiting access to the means of effectuating that decision. It then went on to state the following: "As we observe below, 'the Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults,' n. 17, *infra*, and we do not purport to answer that question now" (brackets in original). Footnote 17, although joined only by a plurality, casts some light on the nature of the "private consensual sexual behavior among adults" referred to in footnote 5 because it cites a law review comment[7] that discusses the possible application of Supreme Court precedent to criminal statutes outlawing private consensual sexual activities, including sodomy. Justice Rehnquist, in a dissenting opinion, criticized the language of footnote 5 because he considered it to be in conflict with *Doe*, which in his view had definitively established the constitutional validity of state prohibitions of certain consensual activities.

The implications of footnote 5 could hardly be clearer. The plain meaning of the phrase "private consensual sexual behavior among adults" encompasses acts of sodomy carried out between consenting adults in private. The identical phrase in footnote 17 is accompanied by a reference to just that sort of activity. The ability of the state to regulate conduct as Georgia has attempted to do, according to the Court in *Carey*, is now an open question. Obviously

**7.** Note, On Privacy: Constitutional Protection for Personal Liberty, 48 N.Y.U.L.Rev. 670, 719–738 (1973).

*Carey* does not provide much guidance as to the proper analysis of the constitutional claims presented in this case; just as obviously, it calls on lower courts to analyze such claims rather than relying on *Doe*.

A second development in the Supreme Court occurred more recently when the Court granted certiorari in *New York v. Uplinger*, —— U.S. ——, 104 S.Ct. 64, 78 L.Ed.2d 80 (1983), and later dismissed the writ as improvidently granted, 104 S.Ct. 2332 (1984). The New York Court of Appeals had ruled in that case that federal constitutional law invalidated a New York statute prohibiting persons from loitering in a public place for the purpose of engaging, or soliciting another person to engage, in "deviate sexual behavior." The decision was premised on an earlier ruling by that court in *People v. Onofre*, 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845 (1981), where it held that the federal constitution invalidated a state statute criminalizing any act of sodomy between two persons. Hence, the petitioner for writ of certiorari in *Uplinger* urged the Supreme Court to consider the constitutionality of state regulations prohibiting consensual sodomy among adults.

After the Supreme Court received the briefs of the parties and heard oral argument in *Uplinger*, it dismissed the writ of certiorari as improvidently granted. In a per curiam order, the Court stated that the case presented an "inappropriate vehicle" for resolving the "important constitutional issues" raised by the parties. The Court also indicated that the constitutionality of state laws against consensual sodomy was one of the most important of those issues; it explained that several impediments to

consideration of the constitutional issues presented in the *Onofre* decision figured heavily in its decision to dismiss the writ. Those impediments included the belated decision of the petitioner not to challenge the *Onofre* decision and the fact that the state court decision in *Uplinger* was subject to varying interpretations, leaving uncertainty as to the precise federal constitutional issue the state court decided.

It is fair to conclude from this order that the Supreme Court was prepared to address the constitutionality of state regulations like Georgia's sodomy statute but chose to address the issue when presented more directly in another case.[8] While the Court may have meant that it was prepared to reconsider the *Doe* affirmance, which would have remained binding precedent until overruled, such a possibility is unlikely because the Court never referred to *Doe* in the *Uplinger* proceedings or indicated in any way that the underlying constitutional issue was settled, even temporarily.[9] Under these circumstances, we interpret the order as an indication that the constitutional questions presented by Hardwick are still open for consideration by the Supreme Court and by this Court. This order, together with the Court's observation in *Carey*, deprives *Doe v. Commonwealth's Attorney* of whatever controlling weight it once may have had. The district court erred in dismissing Hardwick's claim.

### III.  CONSTITUTIONAL STANDARDS

Despite the fact that the district court erred in relying on *Doe v. Commonwealth's Attorney*, we still confront the question of whether the appellees were entitled to dismissal as a matter of law on

---

8. The denial of a petition for writ of certiorari generally has no precedential value. *Hughes Tool Co. v. Transworld Air Lines, Inc.*, 409 U.S. 363, 366 n. 1, 93 S.Ct. 647, 650 n. 1, 34 L.Ed.2d 577 (1973). In this case, however, the Court granted certiorari, considered the briefs, heard oral argument, and dismissed the writ after explaining *its reasons*. We may draw appropriate inferences from such an order. *See Brown v. Allen*, 344 U.S. 443, 489–97, 73 S.Ct. 397, 437–41, 97 L.Ed. 469 (1953).

9. Contrary to the assertion of the dissent, we do not imply that the Supreme Court intended *Uplinger* to be a vehicle for overruling *Doe*. The dismissal in *Uplinger* suggests only that the court intended to consider the constitutional issue and resolve it one way or the other. Hence, speculation as to the views of the dissenting justices in *Uplinger* regarding *the merits* of that case does not influence our reading of the per curiam opinion.

some other ground. *Smith v. Phillips,* 455 U.S. 209, 215 n. 6, 102 S.Ct. 940, 945 n. 6, 71 L.Ed.2d 78 (1982). In particular, the judgment below could stand if we were to conclude that the statute in question is subject to minimal judicial scrutiny and that the appellants could not under any set of facts prove that the statute is not rationally related to the State's regulatory interest. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Such is not the case here. The Georgia sodomy statute infringes upon the fundamental constitutional rights of Michael Hardwick. On remand, the State must demonstrate a compelling interest in restricting this right and must show that the sodomy statute is a properly restrained method of safeguarding its interests. *Cf. Dike v. School Board of Orange County, Florida,* 650 F.2d 783, 787 (5th Cir. Unit B 1981).

▮ The Constitution prevents the States from unduly interfering in certain individual decisions critical to personal autonomy because those decisions are essentially private and beyond the legitimate reach of a civilized society. These include the decision whether to conceive and bear a child, *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979); *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973); *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and decisions affecting certain intimate relationships such as marriage, *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), and other familial ties, *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Dike v. School*

*Board of Orange County, Florida,* 650 F.2d 783 (5th Cir. Unit B 1981).

While the constitutional source of these limitations of the power of the State has been termed the "right to privacy," it is not limited to conduct that takes place strictly in private. Some personal decisions affect an individual's life so keenly that the right to privacy prohibits state interference even though the decisions could have significant public consequences. For instance, the direction of a child's education will have profound public consequences, yet under the Constitution a parent retains authority to direct his or her child's education. *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Stough v. Crenshaw County Board of Education,* 744 F.2d 1479 (11th Cir.1984). Similarly, a state has an interest in assuring the physical health of its citizens by regulating or forbidding certain medical procedures, but that interest gives way when a woman in the early stages of pregnancy chooses not to have a child. *City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

Hardwick desires to engage privately in sexual activity with another consenting adult. Although this behavior is not procreative, it does involve important associational interests. The Supreme Court has indicated in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), that the intimate associations protected by the Constitution are not limited to those with a procreative purpose. The Court in *Griswold* struck down a state law prohibiting the use of contraceptives because it unduly interfered with the sanctity of the marriage relationship. One component of that relationship is the decision whether to beget and bear children. *Carey v. Population Services International,* 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). But the marital relationship is also significant because of the unsurpassed opportunity for mutual support and self-ex-

pression that it provides. As the *Griswold* Court stated, "Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes...." 381 U.S. at 486, 85 S.Ct. at 1682. *See also Zablocki v. Redhail*, 434 U.S. 374, 385–86, 98 S.Ct. 673, 680–81, 54 L.Ed.2d 618 (1978) (listing "associational interests" and procreation as separate interests protected by right to marry).

The intimate association protected against state interference does not exist in the marriage relationship alone. In *Eisenstadt v. Baird, supra*, the Supreme Court held that prohibiting the distribution of contraceptives to unmarried persons was unconstitutional because it treated married and unmarried individuals differently. The benefits of marriage can inure to individuals outside the traditional marital relationship. For some, the sexual activity in question here serves the same purpose as the intimacy of marriage.

In addition to the resemblance between Hardwick's conduct and the intimate association of marriage, we pay heed to the fact that he plans to carry out his sexual activity in private. The right to privacy extends to some activities that would not normally merit constitutional protection simply because those activities take on added significance under certain limited circumstances. In particular, the constitutional protection of privacy reaches its height when the state attempts to regulate an activity in the home. *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980).

In *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), police officers executing a valid search warrant found some obscene films in Stanley's home and he was charged with possession of obscene material. The Supreme Court ruled that a state could not make the private possession of obscene material a crime. Although a state may regulate obscenity when such material is distributed or displayed in public, it may not prohibit strictly private uses of obscenity: "Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home.... Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." Stanley's First Amendment interests, while not sufficient to allow the viewing of obscene material in public, prevented the State from deciding what he could view in private. Thus, the element of privacy deepened Stanley's interests and limited the possible purposes of state regulation. *See also Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality) (city may not prohibit family members from living together; Justice Stevens concurs on ground that ordinance directed at internal composition of home lies beyond city's zoning power).

This case presents a person asserting an interest at least as substantial as the one in *Stanley v. Georgia*. In both cases, the fact that the activity is carried out in seclusion bolsters its significance. This is not a case involving sexual activity with children or with persons who are coerced either through physical force or commercial inducement. The absence of any such public ramifications in this case plays a prominent part in our consideration of Hardwick's legal claim.

In sum, the Supreme Court's analysis of the right to privacy in *Griswold v. Connecticut, supra, Eisenstadt v. Baird, supra,* and *Stanley v. Georgia, supra,* leads us to conclude that the Georgia sodomy statute implicates a fundamental right of Michael Hardwick. The activity he hopes to engage in is quintessentially private and lies at the heart of an intimate association beyond the proper reach of state regulation. Such a right is protected by the Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 486–94, 85 S.Ct. 1678, 1682–87, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring), and the notion of fundamental fairness embodied in the due process clause of the Fourteenth Amendment. *Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct.

705, 726–27, 35 L.Ed.2d 147 (1973). We therefore remand this case for trial, at which time the State must prove in order to prevail that it has a compelling interest in regulating this behavior and that this statute is the most narrowly drawn means of safeguarding that interest.

REVERSED and REMANDED.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that Hardwick has standing to challenge the constitutionality of the Georgia sodomy statute, but that the Does lack standing. I therefore concur in Part I of the majority opinion.

I must dissent from Part II of the majority opinion, however, because I believe that neither the court below nor this court has the authority to reach and decide the merits of Hardwick's constitutional claims.[1] The United States Supreme Court, in *Doe v. Commonwealth's Attorney*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), summarily affirmed the judgment of a three-judge district court upholding the constitutionality of a Virginia sodomy statute nearly identical to Georgia's.[2] I find unpersuasive the arguments advanced by the majority for declining to follow *Doe v. Commonwealth's Attorney*. Therefore, I would affirm the district court's dismissal of Hardwick's complaint for failure to state a claim upon which relief could be granted.

I.

As the majority acknowledges, a summary affirmance by the Supreme Court has binding precedential effect. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Nevertheless, the majority holds that *Doe v. Commonwealth's Attorney* is not entitled to precedential weight because the summary affirmance might have been based on lack of standing, rather than on the merits of the constitutional issues involved.

Contrary to the majority's suggestion, we are not free to speculate that the summary affirmance in *Doe v. Commonwealth's Attorney* might have been based on lack of standing. First, the Supreme Court's discussion of summary affirmances in *Hicks v. Miranda* forecloses such speculation:

As Mr. Justice Brennan once observed, "[v]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes *on the merits of a case ...,*" *Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 979, 3 L.Ed.2d 1200 (1959) ....

*Id.* at 344, 95 S.Ct. at 2289 (emphasis added); *see also* 12 J. Moore, H. Bendix & B. Ringle, Moore's Federal Practice ¶ 400.05–1, at 4–25 (2d ed. 1982) ("[S]ummary affirmances of lower federal court judgments ... are decisions *on the merits,* and are binding on lower courts, in spite of the fact that such dispositions are made on the basis of the appellant's jurisdictional statement and the appellee's motion to dismiss or affirm, without oral argument or full

---

**1.** For this reason, I would not address the constitutional issues discussed in Part III of the majority opinion. If I thought that this court were empowered to reach those issues, however, I would agree with the majority that the Georgia sodomy statute should be tested under the "compelling interest" analysis set out in *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973).

**2.** The Georgia sodomy statute, O.C.G.A. § 16–6–2 (1984), provides, in pertinent part:

(a) A person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another....

(b) A person convicted of the offense of sodomy shall be punished by imprisonment for not less than one nor more than 20 years....

The Virginia statute at issue in *Doe v. Commonwealth's Attorney,* Va.Code § 18.1–212 (1950), provided, in pertinent part:

Crimes against nature.—If any person shall ... carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a felony and shall be confined in the penitentiary not less than one year nor more than three years.

briefs on the merits." (emphasis added)); C. Wright, Law of Federal Courts 757–58 (4th ed. 1983) ("Summary disposition of an appeal, however, either by affirmance or by dismissal for want of a substantial federal question, is a disposition *on the merits.*" (emphasis added; footnote omitted)).

Second, the jurisdictional statement in *Doe v. Commonwealth's Attorney* mentioned the substantive constitutional issues involved in the case, but did not mention the issue of standing.[3] The Supreme Court has held that the jurisdictional statement limits the range of permissible lower court interpretations of a summary disposition. *See McCarthy v. Philadelphia Civil Service Comm'n,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); *Colorado Springs Amusements, Ltd. v. Rizzo,* 428 U.S. 913, 920 n. 6, 96 S.Ct. 3228, 3232 n. 6, 49 L.Ed.2d 1222 (1976) (Brennan, J., dissenting from denial of certiorari).

Third, and most conclusively, if the Supreme Court had decided that the plaintiffs in *Doe v. Commonwealth's Attorney* lacked standing, the Court *would not have had jurisdiction to decide the case.* Therefore, the Court would have had to *dismiss the appeal,* instead of summarily affirming the judgment of the court below.[4] This would be the necessary result

whether the lack of standing was the result of Article III case-or-controversy considerations,[5] or of purely prudential concerns.[6] In my view, the majority fails to address adequately this crucial distinction.

I thus disagree with the majority's conclusion that the Supreme Court in *Doe v. Commonwealth's Attorney* might not have reached the merits of the case. Like all summary affirmances, *Doe v. Commonwealth's Attorney* constitutes a decision on the merits, and, in the words of the Supreme Court, "the lower courts are bound by summary decisions 'until such time as the Court informs [them] that [they] are not.' " *Hicks v. Miranda,* 422 U.S. at 345–46, 95 S.Ct. at 2289 (quoting *Doe v. Hodgson,* 478 F.2d 537, 539 (2d Cir.), *cert. denied,* 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973)).

### II.

The majority also holds that, even if *Doe v. Commonwealth's Attorney* had binding precedential effect when it was decided, such effect has been undermined by recent doctrinal developments. In particular, the majority argues that two footnotes in *Carey v. Population Services Int'l,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), and the dismissal of the writ of certiorari in

**3.** Nor did the opinion of the three-judge district court mention the issue of standing. The opinion clearly reveals that the district court decided the case on the merits. *See Doe v. Commonwealth's Attorney,* 403 F.Supp. 1199, 1200–03 (E.D.Va.1975).

**4.** It must be remembered that the judgment of the district court in *Doe v. Commonwealth's Attorney,* which is what the Supreme Court summarily affirmed, was a judgment *on the merits. See supra* note 3.

The majority cites *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), for the proposition that the Supreme Court does not always vacate the judgment below and remand for dismissal when the Court finds that the plaintiffs lacked standing. I do not quarrel with the majority's proposition. The crucial issue, however, is whether the Court could have summarily affirmed, on the basis of lack of standing, the lower court's decision in *Doe v. Commonwealth's Attorney,* or whether

dismissal of the appeal would have been the required course. In *Rizzo* and *O'Shea,* the Supreme Court *reversed* a lower court decision rendered on the merits in favor of the *plaintiffs.* Other than the majority's interpretation of *Doe v. Commonwealth's Attorney,* it has failed to cite a single instance in which the Court has *affirmed,* on the basis of lack of standing, a lower court decision rendered on the merits in favor of the *defendants.*

**5.** *See Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, *determining the power of the court to entertain the suit.*" (emphasis added)).

**6.** *See, e.g., Poe v. Ullman,* 367 U.S. 497, 509, 81 S.Ct. 1752, 1759, 6 L.Ed.2d 989 (1961) (dismissing appeal because of prudential, rather than Article III, standing considerations).

*New York v. Uplinger,* —— U.S. ——, 104 S.Ct. 2332, 81 L.Ed.2d 201 (1984), indicate that the Supreme Court is now willing to reverse or reconsider *Doe v. Commonwealth's Attorney.* I respectfully disagree.

In footnotes 5 and 17 in *Carey,* the Supreme Court noted that "the Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults." *Carey,* 431 U.S. at 688 n. 5, 97 S.Ct. at 2018 n. 5; *id.* at 694 n. 17, 97 S.Ct. at 2021 n. 17. I do not read this statement as a retreat from *Doe v. Commonwealth's Attorney.* On its face, the statement simply acknowledges the fact that the Court has not yet passed on the validity of many kinds of state statutes regulating sexual conduct.[7] The statement does *not* purport to overrule those cases, such as *Doe v. Commonwealth's Attorney,* in which the Court *has* passed on the validity of other such state statutes.[8]

It is clear from the context in which footnotes 5 and 17 appear in the *Carey* opinion that the majority's interpretation of those footnotes is erroneous. The plaintiffs in *Carey* argued that a New York law regulating the sale and distribution of contraceptives violated their right of privacy because the law infringed on their right to engage in "private consensual sexual behavior." The Supreme Court decided the case instead on a more narrow ground, however, and footnotes 5 and 17 constitute the Court's explanation for declining to adopt the plaintiffs' broad right of privacy

argument. In effect, the Court was saying, "we have not extended the right of privacy as far as the plaintiffs would like." The Court was *not* saying, "it is now an open question whether the right of privacy invalidates all state statutes regulating any kind of private sexual conduct."

The dismissal of the writ of certiorari in *New York v. Uplinger* is an even less compelling reason for refusing to follow *Doe v. Commonwealth's Attorney.* In *Uplinger,* the Court faced a constitutional challenge not to the New York sodomy statute, but to a statute that prohibited loitering in a public place "for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature." N.Y. Penal Law § 240.35–3. The New York Court of Appeals struck down the statute. 58 N.Y.2d 936, 447 N.E.2d 62, 460 N.Y.S.2d 514 (1983). The Supreme Court granted certiorari, —— U.S. ——, 104 S.Ct. 64, 78 L.Ed.2d 80 (1983), but in a subsequent *per curiam* opinion dismissed the writ of certiorari as improvidently granted, —— U.S. ——, 104 S.Ct. 2332, 81 L.Ed.2d 201 (1984).

The majority recognizes that a dismissal of certiorari, like a grant or denial of certiorari, normally has no precedential effect whatsoever.[9] Yet it construes the *per curiam* opinion accompanying the dismissal of certiorari in *Uplinger* as a "signal" from the Supreme Court that *Doe v. Commonwealth's Attorney* is no longer good law. This conclusion is based on the statement in the opinion that the case "provides an inappropriate vehicle for resolving the im-

---

7. For example, the Court has not yet passed on the question whether the right of privacy invalidates state statutes prohibiting fornication. *See, e.g.,* O.C.G.A. § 16–6–18 (1984) (Georgia fornication statute).

8. *See Carey v. Population Services Int'l,* 431 U.S. at 718 n. 2, 97 S.Ct. at 2033 n. 2 (Rehnquist, J., dissenting) ("While we have not ruled on *every* conceivable regulation affecting such conduct the facial constitutional validity of criminal statutes prohibiting *certain* consensual acts has been 'definitively' established." (emphasis added)). Contrary to the majority's view, Justice Rehnquist did *not* consider footnotes 5 and 17

in *Carey* to be in conflict with *Doe v. Commonwealth's Attorney.* Rather, he indicated that footnotes 5 and 17 can, and should, be interpreted *consistently* with *Doe v. Commonwealth's Attorney.*

9. All that can be said with certainty about *Uplinger* is that at least four Justices originally voted to hear the case, and that five Justices subsequently voted not to hear it. *See id.* at ——, 104 S.Ct. at 2335 (White, J., joined by Burger, C.J., Rehnquist and O'Connor, JJ., dissenting from dismissal of writ of certiorari).

portant constitutional issues raised by the parties." *Uplinger,* —— U.S. at ——, 104 S.Ct. at 2334. From this single ambiguous statement, the majority infers (1) that the "important constitutional issues" included whether the right of privacy requires invalidation of all state sodomy laws,[10] and (2) that the Supreme Court intended to reverse or reconsider *Doe v. Commonwealth's Attorney,* but decided to wait for another case to do so.[11] These are inferential leaps greater than I am willing or able to make.

Furthermore, even if the majority's inferences are correct, this would not mean that the lower courts are now free to ignore *Doe v. Commonwealth's Attorney.* That the Supreme Court ultimately found *Uplinger* an "inappropriate vehicle for resolving" whatever constitutional issues the case presented does *not* imply that those issues previously were unresolved. Nor may *this* court reconsider the wisdom of *Doe v. Commonwealth's Attorney* simply because the Supreme Court may have indicated a possible willingness to do so. As the Supreme Court recently noted, "Needless to say, only this Court may overrule one of its precedents." *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983); *see also Jaffree v. Wallace,* 705

F.2d 1526, 1532–33 (11th Cir.1983), *appeal filed on other grounds,* 52 U.S.L.W. 3441 (U.S. Nov. 14, 1983) (No. 83–812), 52 U.S. L.W. 3473 (U.S. Dec. 3, 1983) (No. 83–929), *probable jurisdiction noted,* —— U.S. ——, 104 S.Ct. 1704, 80 L.Ed.2d 178 (1984).[12]

### III.

Whatever our personal views about the constitutionality of a law that permits the state to regulate the most private of human behavior within the confines of the home, unless and until the Supreme Court clearly indicates otherwise, we are bound by that Court's decision in *Doe v. Commonwealth's Attorney.* Respectfully, therefore, I dissent.

---

**10.** The plaintiffs in *Uplinger* raised vagueness, overbreadth, First Amendment, equal protection, and due process challenges to the New York statute. *See id.* at ——, 104 S.Ct. at 2333. The *per curiam* opinion dismissing the writ of certiorari did not identify which of these constitutional issues the Supreme Court felt were "important." Furthermore, as the majority notes, the Court was not even certain as to just what federal constitutional issues actually had been decided by the state court. Therefore, unlike the majority, I cannot conclude that the "important constitutional issues" referred to by the Court included the right of privacy and its effect on state sodomy laws.

**11.** As the majority acknowledges, if *Doe v. Commonwealth's Attorney* indeed was a decision on the merits, then we are bound by that decision until the Supreme Court indicates a "willingness to reverse or reconsider" the case. I find highly questionable any inference that the Supreme Court originally viewed *Uplinger* as an appropriate vehicle for reversing or reconsidering *Doe v. Commonwealth's Attorney.* Three of the four

Justices who dissented from the dismissal of the writ in *Uplinger* (and who presumably were among those originally voting to hear the case) were in the majority in *Doe v. Commonwealth's Attorney,* and two of the four dissented in *Carey v. Population Services Int'l. See Uplinger,* —— U.S. at ——, 104 S.Ct. at 2335 (White, J., joined by Burger, C.J., Rehnquist and O'Connor, JJ., dissenting from dismissal of writ of certiorari).

**12.** Nor can the majority rely on the Supreme Court's recent affirmance by an equally divided vote in *Board of Educ. v. National Gay Task Force,* —— U.S. ——, 105 S.Ct. 1858, 84 L.Ed.2d 776 (1985). Affirmances by an equally divided vote are entitled to no precedential weight. *Neil v. Biggers,* 409 U.S. 188, 191–92, 93 S.Ct. 375, 378–79, 34 L.Ed.2d 401 (1972); *Ohio ex rel. Eaton v. Price,* 364 U.S. 263, 264, 80 S.Ct. 1463, 1464, 4 L.Ed.2d 1708 (1960). Furthermore, the Tenth Circuit had held that the right of privacy was *not* implicated by the Oklahoma statute involved in the case. *See National Gay Task Force v. Board of Educ.,* 729 F.2d 1270, 1273 (10th Cir.1984).