**R. Val COOPER, Plaintiff,**

v.

**STATE OF UTAH, et al., Defendants.**

**Civ. No. 87–C–606G.**

United States District Court, D. Utah, C.D.

Dec. 21, 1987.

---

Brian M. Barnard and C. Dave Nolan, Salt Lake City, Utah, for plaintiff.

Lee Dever, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on for hearing on October 5, 1987, on defendants' Motion to Dismiss and plaintiff's Motion for Summary Judgment, Motion to Certify Plaintiff Class, and Motion for Preliminary Injunction. Plaintiff was represented by Brian M. Barnard and C. Dane Nolan; and defendants were represented by Lee Dever of the Attorney General's office. Plaintiff and defendants submitted memoranda and presented oral argument, after which the matter was taken under advisement. On December 10, 1987, there was a further hearing on defendants' pending motion for protective order concerning discovery, and on a new motion by plaintiff for prelimi-

nary injunction occasioned by actions undertaken or threatened by at least one defendant since this matter originally was taken under advisement.[1] The motions in effect were held in abeyance until decision on the motions under advisement. The court now being fully advised enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Plaintiff, R. Val Cooper ("Cooper") is an adult resident of Salt Lake County, State of Utah. He was married March 26, 1965, and was divorced in August 1976. The decree of divorce imposed a support obligation in favor of Cooper's former spouse who was awarded custody of their minor children. Cooper remarried in July 1980, in the State of Nevada while still a resident of Salt Lake County, State of Utah. He had fallen behind on the prior support obligations and at the time of remarriage he was not current. Prior to remarriage Cooper did not secure a verified statement from his former spouse as required by Utah law and he did not comply with the relevant statutory provisions of Utah Code Ann. 30–3–8 (1984) concerning the past support obligation.[2] Nor did Cooper comply with two related statutory provisions[3] which had been declared unconstitutional in 1978, as violative of both the Utah and the United States Constitutions, by the Third Judicial District Court for Salt Lake County in a prior case, but the case was not appealed.[4] A fourth related statutory provision, section 30–1–29, is also implicated.[5]

Cooper seeks a declaration that these Utah statutes are unconstitutional under the equal protection and due process clauses of the Fourteenth Amendment. Cooper also seeks a declaratory judgment that his marriage is valid and lawful. Cooper further seeks class certification, injunctive relief, and attorney fees and court costs.

## LEGAL ANALYSIS

### I. "CASE" OR "CONTROVERSY"— STANDING

■ Defendants claim that Cooper's complaint should be dismissed for lack of subject matter jurisdiction. In this regard, it is urged that since Cooper has remarried without any problem, and is under no threat of prosecution or other sanction, he has no standing before the court to challenge the statutes in question. Standing is one aspect of the "case" or "controversy" requirement. *Heckler v. Mathews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed. 2d 646 (1984); *Gladstone, Realtors v. Vil-*

---

1. *See infra* note 26.

2. Section 30–3–8, titled "Remarriage—When Unlawful," provides in relevant part that:
 ... If support has been ordered to be paid under a decree of divorce and such order is still in effect, *marriage by the person ordered to pay such support* to anyone other than the person from whom the divorce was obtained *shall be lawful only if the person so obligated establishes that he or she is current in the payment of such support obligation,* as otherwise provided by law.
 Utah Code Ann. § 30–3–8 (1984) (emphasis added).

3. Utah Code Ann. § 30–1–27 (1984) provides "[i]t shall be unlawful for an obligor to marry or apply for a marriage license in this state or, if the obligor is domiciled in this state, to marry or apply for a marriage license in another state, without first complying with Section 30–1–28." Utah Code Ann. § 30–1–28 (1984) provides that a person with a prior support obligation may not marry unless he files with the clerk a verified statement from: (1) the person whom the obligor proposes to marry verifying an under-

standing of the support obligation; and (2) the person or entity entitled to the support obligation verifying that the support obligation is not in default. The statement required, as described in subsection (2), can only be avoided by obtaining a court order. This is an appealable order.

4. *Wilde v. Evans, et al.,* C78–497 (Third Judicial District, Utah Feb. 22, 1978). The named defendants were W. Sterling Evans, the clerk of the County of Salt Lake, Jeradean Martin and Jane Doe. Defendants were represented by an assistant county attorney. Copies of the verified complaint and order to show cause were served on the office of the Utah Attorney General. Defendants' Memorandum re: Motion to Certify Plaintiff Class, exhibit D. The Attorney General of Utah acceded to the result reached in the case and it was not appealed to the Supreme Court of Utah.

5. Utah Code Ann. § 30–1–29 (1984) makes the act of marrying outside of this state, for the purpose of avoiding these provisions, a misdemeanor.

*lage of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). Under Article III, Section 2 of the United States Constitution the judicial power of the United States extends only to cases or controversies. In addition, 28 U.S.C. § 2201 specifically requires the existence of an actual controversy. The statutory and constitutional standards are the same in determining whether a controversy exists. *Cass County v. U.S.,* 570 F.2d 737, 739 (8th Cir.1978); *see also Allen v. Likins,* 517 F.2d 532, 534 (8th Cir.1975).

■ For an individual, such as Cooper, to have standing he must have a "personal stake in the outcome of the controversy." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).[6] The constitutional requirement of personal stake has two prongs. *First,* the litigant must show that he has suffered an actual or threatened injury, also referred to as injury in fact. *Second,* the litigant must demonstrate that the defendant's conduct caused the injury and that granting the relief requested likely would redress the injury. *Hardwick v. Bowers,* 760 F.2d 1202, 1204 (11th Cir.1985), *cert. granted,* 474 U.S. 943, 106 S.Ct. 342, 88 L.Ed.2d 284 (1985).

Defendants insist that Cooper has not sustained any injury in fact in that he was remarried without challenge in 1980, there has been no subsequent challenge to the validity of the remarriage, and no criminal prosecution has been brought. Defendants' also assert that Cooper has not stated a claim upon which relief can be granted

under 42 U.S.C. § 1983. Plaintiff maintains that a fundamental right or privilege secured to him by the federal constitution, the right to marry, has been violated under color of state law. This court considers that if indeed Cooper's fundamental right to marry is implicated by the Utah statutes, the complaint would not be subject to dismissal for failure to state a claim,[7] a "case" or "controversy" would be presented, and Cooper would have sufficient standing. Accordingly, we next examine the impact of those laws upon that fundamental right.

## II. THE RIGHT TO A LAWFUL MARRIAGE

Whether Cooper has a sufficient stake in the outcome of this litigation turns on whether a constitutional right of his is implicated by the statutory declaration of the State of Utah that his current marriage is "unlawful." This depends on whether the recognized fundamental right to marry [8] encompasses the right to have and enjoy a state approved and fully lawful marriage. Cooper contends that his fundamental right to marry is unconstitutionally infringed by Utah Code Ann. sections 30–1–27, 30–1–28, 30–1–29, and 30–3–8 for two reasons. First, the statutes make his remarriage a criminal offense, and second, the statutes cast a cloud over the legality and the validity of his marriage.

### A. Criminal Liability

Cooper argues that the word "unlawful" in section 30–1–27 and the Title of section

---

**6.** In addition there may be prudential reasons why a court may refuse to hear a case. *See Warth v. Seldin,* 422 U.S. 490, 499–500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This prudential limitation is usually addressed by answering the question "whether the interest sought to be protected ... is arguable within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing Service v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

**7.** *See Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961) *overruled on other grounds, Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Taylor v. Nichols,* 409 F.Supp. 927, 951 (D.Kan.1976), *aff'd* 558 F.2d 561 (10th Cir.1977);

*Jones v. Hopper,* 410 F.2d 1323, 1326–27 (10th Cir.1969), *cert. den.,* 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).

**8.** The right to marry was first recognized as a fundamental right protected by the Constitution in *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). The Supreme Court reaffirmed the fundamental character of the right to marry in *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978). In *Zablocki,* the Supreme Court ruled that statutory requirements relating to support obligations similar to those at issue here caused a serious intrusion into the "freedom of choice in an area in which we have held such freedom to be fundamental." *Zablocki,* 434 U.S. at 387, 98 S.Ct. at 681.

30–3–8, and the words "lawful only if" in section 30–3–8, mean that the act of remarrying without compliance with section 30–1–28, is criminal and punishable as an *infraction.*[9] A person convicted of an infraction "may be subject to a fine, forfeiture, and disqualification, or any combination," under Utah Code Ann. § 76–3–205(2) (1978). In addition, section 30–1–29 may make the act of Cooper's remarriage in the State of Nevada a Class B misdemeanor.[10]

▉▉▉ It is not necessary that Cooper be arrested or prosecuted to be entitled to challenge the constitutionality of the statutes. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 302, 99 S.Ct. 2301, 2310, 60 L.Ed.2d 895 (1979); *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Wilson v. Stocker,* 819 F.2d 943, 946 (10th Cir. 1987).[11] However, the threat of prosecution must be real and immediate, not imaginary and speculative. *Hardwick,* 760 F.2d

at 1205. So long as a statute which declares conduct to be subject to criminal sanctions is on the books, and government prosecutors are acting even sporatically to enforce the law, the threat of prosecution is real and there could be no lack of fear of criminal prosecution for engaging in such conduct.[12]

### B. Lawfulness of the Marriage

▉▉▉ Cooper clearly would have standing if his marriage were declared to be "void" under Utah statutes.[13] However, Defendants argue that remarriage without being current in support obligations does not make the remarriage void because it is not listed in the statutory definitions of prohibited and void marriages. Utah Code Ann. § 30–1–2 (1984). Nevertheless, Sections 30–1–26 and 30–3–8 impose mandatory compliance before a remarriage can be "lawful."[14] It is unclear whether "unlaw-

---

9. Utah Code Ann. § 76–3–105(2) (1978) provides that: "Any offense which is an infraction within this code is expressly designated and any offense defined outside this code which is not designated as a felony or misdemeanor and for which no penalty is specified is an infraction." Cooper argues that the "unlawful" conduct here discussed would constitute an infraction because: (1) it is an offense defined outside of Title 76; (2) it is not designated as a felony or misdemeanor; and (3) it has no specified penalty. This court agrees.

10. Utah Code Ann. § 76–3–104(2) (1978) provides that: "An offense designated a misdemeanor, either in this code or in another law, without specification as to punishment or category, is a class B misdemeanor." A person convicted of a Class B misdemeanor may be sentenced to imprisonment for a term not exceeding six months, under Utah Code Ann. § 76–3–204(2) (1978).

11. In *Younger v. Harris,* the Supreme Court held that the appellees, other than Younger, were not proper parties because they did not demonstrate to the District Court that they had ever been prosecuted, had ever been threatened with prosecution, *"or even that a prosecution was remotely possible,"* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971) (emphasis added), *overruled on other grounds, Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). *See also Tiverton Bd. of License Comm'r v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985); *Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113

(1969). In *Hardwick* the court looked to the identity and interests of the parties to estimate the likelihood of prosecution, which involved a balancing of "the interest of the plaintiff in engaging in the prohibited activity" as against the State's interest in enforcing the statute and past enforcement patterns. 760 F.2d at 1205.

12. Even since this case was taken under advisement, at least one Assistant County Attorney and one State District Court Judge have relied upon and asserted the statute as viable and prohibitive of marriages without compliance with its terms. Affidavit of Jerry L. Casida and Affidavit of Kevin Sullivan, (concerning actions taken on November 9, 1987, in connection with a pending case in Weber County). *See also* Defendants' Memorandum in Support of Protective Order and in Response to Motion for Temporary Restraining Order, exhibits A, B, and C. The court also takes judicial notice of those proceedings which have been widely published. *See* Deseret News, Nov. 10, 1987 at B3, col. 3; Salt Lake Tribune, Nov. 4, 1987, at D1, col. 6; Fed.R.Evid. 201. *See also, infra,* note 26.

13. In *Zablocki,* 434 U.S. at 383, 98 S.Ct. at 679 the Supreme Court retained jurisdiction over the matter even though the plaintiff had since remarried, because the remarriage was void under the applicable state statutes.

14. Defendants refer to several cases that stand for the proposition that improperly obtained or defective licenses do not affect the validity of the marriage. *Johnson v. Johnson,* 235 S.C. 542, 112 S.E.2d 647, 652 (1960); *Hunt v. Hunt,* 23

ful" means that the marriage is "void," "voidable," or "unlawful but not void." [15] Under any of the alternatives, however, the sanctity of the marriage is called into question. Even in the absence of prosecution or other sanctions, the marriage, by statute, is a second rate affair, at best only tolerated by society as "unlawful."

Based upon the foregoing, the court holds that the fundamental right to marry encompasses the right to have a state approved and lawful marriage.[16] The court further holds that the right to a lawful marriage, without fear of criminal prosecution, is a part of the fundamental right to marry, coming within the zone of interests protected by the Fourteenth Amendment. *Data Processing*, 397 U.S. at 153, 90 S.Ct. at 829.

## III. SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT

■ Cooper seeks declaratory and injunctive relief to prevent the State of Utah, its Attorney General and the County Clerks of all Utah counties from enforcing the Utah statutes which are claimed to be unconstitutional as violative of Fourteenth Amendment rights. Although not expressly stated, it is clear by the relief Cooper seeks that the named defendants are sued in their official capacity.[17] The Supreme Court has held that unless a state waives Eleventh Amendment immunity or Congress overrides it, a state cannot be sued directly in its own name regardless of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d

1114 (1978) (per curiam). The Supreme Court has also expressly rejected the argument that 42 U.S.C. § 1983 abrogated the state's Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 341–42, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *see also Lee v. McManus*, 589 F.Supp. 633, 638 (D.Kan.1984). However, in *Ex Parte Young*, 209 U.S. 123, 155–59, 28 S.Ct. 441, 652–53, 52 L.Ed. 714 (1908) the Supreme Court held that a state officer could be sued in federal court to prevent enforcement of an unconstitutional state law. The result of that holding is that suit may be brought in federal court against state officials so long as only prospective injunctive relief is sought as relating to an alleged constitutional violation. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 425, 88 L.Ed.2d 371 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984); *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed. 2d 358 (1979); *see also B.J.R.L. v. State of Utah, et al.*, 655 F.Supp. 692, 694–95 (D.Utah 1987) and *Navajo Nation v. District Court for Utah County*, 624 F.Supp. 130, 137 (D.Utah 1985). In *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) the Supreme Court noted another distinction under the *Ex Parte Young* exception to suits against state officials wherein prospective relief is sought. The distinction, dealing with payment of state funds, was made on the ground that in *Ex Parte Young* the payment of funds was necessary to comply in

Okl. 490, 100 P. 541 (Okla.1909); *Ronfrow v. Ronfrow*, 56 P. 534 (Kan.1899); *In Re Love's Estate*, 142 P. 305 (Okla 1914); and, *Portwood v. Portwood*, 109 S.W.2d 515 (Tex.Ct.App.1937). However, the existence of such improperly obtained or defective licenses is not declared by statute to render the marriages "unlawful."

**15.** In Utah Legislative Survey, *The Family Court Act*, 1970 Utah L.Rev. 106, 115 (1970) ("The Family Court Act") Neil R. Sabin points out that the original bill providing that marriages under Section 30–1–27 be declared "void" was rejected by the Legislature, but that even "unlawful but not void" marriages are not without legal consequence. A "void" marriage would be subject to collateral attack by the former spouse and heirs; a "voidable" marriage would be subject to attack

by the marriage partners; "unlawful" marriages, while probably not subject to such attacks, could have the penal consequences of criminal liability as discussed earlier.

**16.** A federal court in Tennessee also recognized the importance of affording constitutional protection to interests associated with marriage. *Holt v. Shelton*, 341 F.Supp. 821 (M.D.Tenn. 1972) (Held, school regulation prohibiting married high school students from participating in certain school activities and functions infringed upon married student's fundamental right to marry). In *Holt*, as here, the infringement occurred *after* the marriage.

**17.** *Cf Wilson*, 819 F.2d at 947; *Wells v. Schmidt*, 80 F.R.D. 463, 465 (W.D.Wis.1978).

the future with a "substantive federal-question determination" and not just due to a past breach of a legal duty on the part of the state officials. *Id.*

Based upon the foregoing analysis, the court holds that plaintiffs' claims for prospective injunctive relief from alleged constitutional violations should be allowed to proceed against the Attorney General and the County Clerks. The claims against the State of Utah, however, are dismissed.

## IV. CONSTITUTIONALITY OF THE UTAH STATUTES

### A. Effect of Existing State Court Judgment

 As previously noted, in 1978 a Utah State District Judge declared certain of the statutes at issue here to be unconstitutional.[18] Full faith and credit should be afforded such state court judgments. *Thomas v. Washington Gas Light Co., et al.,* 448 U.S. 261, 264, 100 S.Ct. 2647, 2652, 65 L.Ed.2d 757 (1980); 28 U.S.C. § 1738. However, the state judgment would be conclusive only as to the parties and claim actually litigated. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed. 2d 767 (1979) (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). The statutes in question here are still printed in the Utah Code, and are relied upon in other counties of the state as reflecting existing law.[19]

### B. Effect of the Attorney General's Actions

The Attorney General's office did not resist the proceedings in the state action in 1978.[20] Also, the Attorney General did not appeal the state court judgment even though the Attorney General opined that the state court judgment is not applicable outside the judicial district where it was decided.[21] As an apparent alternative to taking an appeal, the Attorney General's office opined that the statutes in question in *Wilde v. Evans* are unconstitutional and has so advised the county clerks in every county of the State of Utah.[22]

Defendants urge that the final state court judgment, albeit unappealed, coupled with the Attorney General's opinion that the law is unconstitutional, together with voluntary action by most county clerks in not enforcing the Utah statutes, combine to render the statutes of no force or effect to deny any rights. Defendants argue it is as though the statutes for all intents and purposes had been declared unconstitutional by judicial decree. The problem with this analysis is that by the simple expedient of certifying no intent to prosecute, the right of an aggrieved plaintiff to challenge the

---

18. *See supra* notes 3 and 4.

19. *See supra* note 11 and *infra* note 26.

20. In his memorandum decision holding the Utah statutes unconstitutional, Judge Dean Conder said:
 This court has been advised that a copy of the Verified Complaint and Order to Show Cause have been served upon the Utah Attorney General's office and that they do not desire to appear or resist this proceeding.
 Plaintiff's Memorandum Re: Motion to Certify Plaintiff Class, Exhibit M.

21. In a letter dated May 22, 1978, to W. Sterling Evans, Clerk of the Third District Court, Assistant Attorney General Bernard M. Tanner said:
 The effect of that ruling of the District Court [*Wilde v. Evans,* Civil No. C–78–497] would extend by its own terms at most to the Third District, encompassing Salt Lake and Tooele Counties.

 Upon evaluation by our office it was determined that it would not be a wise use of our time and effort to appeal Judge Conder's ruling to the Utah Supreme Court. Thus, the effect of the ruling in Wilde v. Evans is not subject to being extended to statewide application by the Utah Supreme Court.
 Defendants' Memorandum in Opposition of Plaintiff's Motion for Summary Judgment, Exhibit A.

22. The Assistant Attorney General also notified all County Clerks "not to seek to enforce the statute. Thus, if this advice is followed, the practice in the other counties will conform to the practice in Salt Lake County where the statute is no longer being enforced.... Attention all County Clerks—Pursuant to the above it is our opinion that 31–1–27 is unenforceable as unconstitutional." *Id.*

constitutionality of enactments could be thwarted and standing defeated. However, the law could be resurrected at a later time since the action of one Attorney General would not be binding on a subsequent Attorney General.[23]

Manifestly, only a court of law by judicial decree, and not the Attorney General by issuance of an opinion, effectively can render a legislative enactment unconstitutional.[24] The Supreme Court of Utah has stated that the Attorney General has "the right, if not the duty, to bring suits to clarify the constitutionality of laws enacted by the [Utah] legislature." *Hansen v. Barlow,* 23 Utah 2d 47, 456 P.2d 177, 181 (1969). The court agrees. The prior action of the Attorney General, in failing to appeal the state judgment and failing to obtain an effective ruling by the Supreme Court of Utah of general and statewide applicability, has only added to the uncertainty of the constitutional status of the Utah statutes.

**C. Utah Statutes Measured by the Equal Protection Clause**

**1. Certification of Plaintiff Class**

■ Cooper seeks to have this action maintained as a class action[25] on behalf of persons "similarly situated." This would include all Utah residents who were in arrears under a prior support obligation and married after July 1, 1969 without compliance with the Utah statutory requirements. Cooper also would include in the class persons who seek to be married who have not yet remarried, but he cannot represent those persons because they are not "similarly situated" in that he was remarried before this action was filed.[26]

Cooper alleges a substantial class size which supports the need for broad remedial relief more readily available through a class action. *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 272 (10th Cir.1977). A common question of law exists, i.e., whether these Utah statutes are unconstitutional. Cooper's claims are typi-

---

**23.** *See generally People v. McClellan,* 118 A.D. 177, 103 N.Y.Sup.Ct. 146 (1907), *aff'd,* 188 N.Y. 618, 81 N.E. 1171 (N.Y.1907) (per curiam); 7A C.J.S. *Attorney General,* § 7; *see also Allen,* 517 F.2d at 534 (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (defendants' voluntary cessation of allegedly illegal conduct would not moot a case where resumption of the challenged conduct, in other words their freedom to return to their old ways, depends on the defendants' capricious actions)).

**24.** Utah Const. Art. V, § 1 provides:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

Therefore, under the separation of powers doctrine, only the judicial branch can determine the constitutionality of Legislative enactments. *See Timpanogos Planning and Water Management Agency v. Central Utah Water Conservancy Dist.,* 690 P.2d 562, 567 (Utah 1984); *Hansen v. Utah State Retirement Bd.,* 652 P.2d 1332, 1336 (Utah 1982); *Matheson v. Ferry,* 641 P.2d 674, 689 (Utah 1982); *Shea v. State Tax Comm'n,* 101 Utah 209, 120 P.2d 274, 275 (1941); *see also Kinterknecht v. Indus. Comm'n,* 175 Colo. 60, 485 P.2d 721, 724 (1971); *Maloney v. Rhodes,* 45

Ohio St.2d 319, 345 N.E.2d 407, 411 (1976); *Gershman Inves. Corp. v. Danforth,* 517 S.W.2d 33, 35 (Mo.1974).

**25.** Certification of a plaintiff class may be appropriate where: (1) the class of plaintiffs is so numerous that joinder of the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

**26.** At a hearing in *State v. Cassida,* Weber County District, State of Utah, No. 18488, on November 9, 1987, Jerry Cassida was denied the right to remarry his former wife. The Assistant County Attorney urged that under State law "people can't be married if they owe child support." *See* Defendants' Memorandum in Support of Protective Order and in Response to Motion for Temporary Restraining Order, exhibit C, at 3. It appears section 30-3-8 was the "state law" relied upon by the assistant county attorney to support his claim that Cassida could not remarry. *Id.* at exhibit B. Since that hearing, and after successful prosecution of Cassida, counsel represented to the court at a hearing on December 10, 1987, and the local newspapers have so reported, that the marriage was permitted. *See* Salt Lake Tribune, Dec. 5, 1987, at 10A, col. 3 and Deseret News, Dec. 6, 1987, at B10, col. 3. *See also supra* note 12.

cal of the class because the same legal or remedial theory used by him would apply to the class. *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir.1976). There is no evidence that Cooper would not adequately protect the interests of the class. In addition to these requirements, a class action may be maintained where the opposing party acts on grounds generally applicable to the class and declaratory or injunctive relief is sought for the class as a whole. Fed.R.Civ.P. 23(b)(2). Manifestly, the Utah statutes create a cloud of illegality and invalidity over the marriages of Cooper and others similarly situated.

For the reasons stated for purposes of challenging the Utah statutes, this court certifies this action as a proper plaintiff class action consisting of previously married Utah residents who were under a support obligation as a result of the termination of that previous marriage and who remarried after July 1, 1969, while not current on their support obligation without compliance with the Utah statutes.[27]

### 2. Statutory Classifications

■■■ Plaintiffs urge that an unconstitutional classification is created by the Utah statutes in that they impact persons differently who have remarried but who had prior unsatisfied past support obligations at the time of remarriage as compared with those who remarried but had no such back support obligations. The effect of the statutes on the former classification, to which Cooper belongs, is to impinge the fundamental right to have and maintain a lawful marriage, free from the threat of criminal prosecution.

Statutory classifications most often are upheld against attacks under the equal protection clause if they are rationally related to some legitimate governmental interest.

*San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973). However, a statutory classification which impinges upon fundamental rights can only be upheld if it is necessary to promote compelling governmental interests and is narrowly drawn to express only such interests. *Carey v. Population Services Int'l,* 431 U.S. 678, 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). Because the fundamental right to marry is affected in this case, the Utah statutes must be subjected to strict scrutiny.

### 3. Strict Scrutiny

Under the requirements of strict scrutiny the state bears the burden of showing how the statutory classification promotes a compelling state interest. *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331. Here, defendants do not allege or argue that the statutes further any state interests.[28] If the Utah statutes were to be enforced because of a supposed compelling state interest they would not withstand strict scrutiny because they are not narrowly drawn.[29] On the other hand, if the statutes are not to be enforced, as defendants claim, or sporadically enforced, as it appears from the record, no compelling state interest is being served by having them on the books. In all events, achievement of any legitimate state interest would be possible, without restricting the right to marry, under other applicable provisions of Utah law.[30] This court considers that the test of strict scrutiny is not met and the statutory classification cannot be justified. Further, it is manifest that the statutes interfere with plaintiffs' constitutionally protected right to a lawful marriage, free from criminal liability or the threat thereof. Accordingly, this court

---

**27.** In a similar action the United States Supreme Court approved the lower court's decision to allow a plaintiff class to challenge the Wisconsin statutes that were similar to these Utah statutes. *Zablocki,* 434 U.S. at 379, 98 S.Ct. at 677.

**28.** The apparent purpose of the statutes, as stated at the time of their enactment, was to protect the second family and alleviate problems caused by failures under support obligations. Additionally, the legislature was concerned about

increased welfare payments. The Family Court Act at 1114. However, a state's interest in saving welfare costs is not a compelling state interest. *Shapiro,* 394 U.S. at 633, 89 S.Ct. at 1330.

**29.** *Zablocki, supra,* 434 U.S. 390–91, 98 S.Ct. at 683; *see also Wilson, supra,* 819 F.2d at 949.

**30.** *See, e.g.,* Utah Code Ann. sections 78–45b–1 *et seq.* (1987) (child support provisions).

holds that Utah Code Ann. Section 30–3–8, and the other Utah statutes, are in violation of the equal protection clause of the Fourteenth Amendment.[31]

## V. INJUNCTIVE RELIEF

■■■ There remains the issue of enjoining defendants from future enforcement of the unconstitutional Utah statutes. In the absence of a pending state criminal prosecution, injunctions may be issued by federal courts with respect to the constitutionality of state statutes. *Steffel v. Thompson,* 415 U.S. 452, 462–63, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). Under the circumstances presented here, in the face of enforcement or threat of enforcement of the statutes by at least one prosecutor and judge in spite of advice by the Attorney General, voluntary cessation of enforcement by less than all defendants,[32] and continued uncertainty as to the status of the laws, this court deems it appropriate to enter an injunction. Accordingly, it is ordered that a permanent injunction should issue enjoining the defendants named herein from further enforcement of the provisions of Utah Code Ann. sections 30–1–27, 30–1–28, 30–1–29, and 30–3–8.

## VI. VIOLATION OF CIVIL RIGHTS UNDER SECTION 1983

In order to state a claim under 42 U.S.C. section 1983, Cooper must allege two elements: (1) that the defendants were acting

under color of state law, and (2) that their conduct subjected him or caused him to be subjected to a deprivation of some right, privilege or immunity secured by the Constitution of the United States.[33] The United States Supreme Court has construed the "state action" requirement of the Fourteenth Amendment and the "under color of state law" requirement of section 1983 to be substantially the same. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982); *Briley v. State of California,* 564 F.2d 849, 855 (9th Cir.1977); *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974) *cert. denied,* 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975).

■■■ Turning to the first requirement that there be state action, in *Lugar* the Supreme Court delineated a two-step inquiry in resolving the issue:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

457 U.S. at 937, 102 S.Ct. at 2753. There can be no question but that under Utah's statutory scheme the first part of the *Lugar* test is met. "Undoubtedly the State

---

**31.** Because of this holding, plaintiffs' contentions of unconstitutionality under the due process clause are not reached. This ruling is consistent with the prior state district court's ruling that sections 30–1–27 and 30–1–28 violate the Fourteenth Amendment of the United States Constitution. *See supra* notes 3 and 4.

**32.** Defendants' voluntary cessation of enforcing the Utah provisions is an important factor bearing on the question of whether a court should exercise its power to enjoin the defendant. *Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). However, here defendants have not carried the burden of demonstrating that there is no reasonable expectation that the Utah statutes will be enforced. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Indeed, the recent revival of interest in the use of these provisions to prevent a marriage and the fact that an informal opinion

of the Attorney General is not binding leads this court to the conclusion that injunctive relief is not only proper, but necessary.

**33.** 42 U.S.C. § 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." State officials are "persons" for the purpose of civil rights violations. *Monroe,* 365 U.S. at 172, 81 S.Ct. at 476, *overruled on other grounds, Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* expanded the interpretation of "persons" to include municipalities.

was responsible for the statute[s]." *Lugar*, 457 U.S. at 938, 102 S.Ct. at 2754.[34] Since the first test is met, this court must determine whether operation of the statutes in this case implicate the defendants to a degree whereby they "may fairly be said to be state actor[s]." *Id.* at 937, 102 S.Ct. at 2754. In focusing on the second part of the inquiry, defendants argue that there can be no cause of action under section 1983 because there has been no affirmative conduct by defendants. However, it is apparent that the statutes involved are *self-operative* in that they create the resultant criminal liability and unlawfulness of marriages where there is non compliance.[35] The State of Utah made an official policy decision to create a classification of marriages that are subject to criminal and civil sanctions. That state decision is implemented by county clerks who have the duty of issuing all marriage licenses [36] and by the Attorney General whose duties include supervision over the county attorneys of the state [37] who in turn are responsible for conducting prosecutions on behalf of the state.[38] As to the second element under section 1983 that there be a deprivation of a right, by reason of this action Cooper has achieved a declaration by this court that he has been deprived of a fundamental right secured by the equal protection clause of the Fourteenth Amendment to the United States Constitution. *French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976) (citing *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972)); *United States ex rel. Campbell v. Pate*, 401 F.2d 55, 57 (7th Cir.1968). Accordingly, this is a proper civil rights action under § 1983.

In view of the result reached, this court finds Cooper to be the prevailing party herein,[39] entitled to reasonable attorney's fees as part of the costs in the absence of a strong showing of special circumstances.[40]

Based upon the foregoing, plaintiff's motion for summary judgment is granted and defendants' motion to dismiss is denied. Plaintiff's marriage and the marriages of those similarly situated are declared to be fully valid and lawful. Further, defendants are enjoined from enforcing the provisions of Utah Code Ann. sections 30–1–27, 30–1–28, 30–1–29 and 30–3–8 all of which are declared unconstitutional under the equal protection clause of the United States Constitution. Counsel for plaintiff

---

**34.** The existence of "state action" is obvious where the litigant challenges the constitutionality of a state statute. *Brown v. Bd. of Education,* 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873 (1954); *see also Cooper v. Aaron,* 358 U.S. 1, 16–17, 78 S.Ct. 1401, 1408–09, 3 L.Ed.2d 5, 19 (1958) (quoting *Ex parte Virginia,* 100 U.S. (10 Otto) 339, 347, 25 L.Ed. 676 (1879)) (where the Supreme Court stated "[a] State acts by its legislative, its executive, or its judicial authorities" for purposes of the Fourteenth Amendment state action requirement.)

**35.** In *Wilson,* 819 F.2d at 947 the court noted there was "an appreciable threat of injury flowing directly from the statute itself." *See Swayne v. L.D.S. Social Services,* 670 F.Supp. 1537, 1541–42 (D.Utah 1987) (wherein this court noted the self operative nature of the Utah Adoption Statutes). *See also Lamar v. Steele,* 698 F.2d 1286 (5th Cir.1983), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983) (held, constitutional deprivation results, and a section 1983 claim can accrue from threats or threatened conduct, without any affirmative conduct on the part of the defendant). *But cf. Macko v. Byron,* 760 F.2d 95, 97 (6th Cir.1985) (where the allegation concerned a threat and that threat was not an actual infringement of a constitutional right).

**36.** Utah Code Ann. § 17–20–4(1) (1987).

**37.** Utah Const. Art. VII, § 16; Utah Code Ann. § 67–5–1(5) (1986); *see also Ex parte Young, supra,* 209 U.S. at 161, 28 S.Ct. at 454 (a state attorney general's powers include the power of enforcement of legislation.)

**38.** Utah Code Ann. § 17–18–1(1), –(6) (1987).

**39.** The standard of "prevailing party" for purposes of 42 U.S.C. § 1988 is whether the plaintiff has "succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)); *see also In re Kansas Congress Dist. Reapportionment Cases,* 745 F.2d 610, 612 (10th Cir.1984).

**40.** *Wilson,* 819 F.2d at 951. Once determined to be the prevailing party, the plaintiff is then ordinarily entitled to an award of attorney's fees unless special circumstances would render it unjust. *Corbitt v. Andersen,* 778 F.2d 1471, 1475 (10th Cir.1985).

is directed to prepare and submit to the court a form of judgment in accordance with this Memorandum decision and Order in compliance with Rule 13(e) of the Rules of this Court.

IT IS SO ORDERED.