

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

April 19, 1996

The Honorable John Vance
Dallas County District Attorney
411 Elm Street
Dallas, Texas 75202

The Honorable Hardy L. Wilkerson
Howard County Attorney
P.O. Box 2096
Big Spring, Texas 79721

Opinion No. DM-384

Re: Whether sections 1.045 and 1.07(a)(1) of the Family Code, requiring an applicant for a marriage license to state under oath that he or she does not owe delinquent court-ordered child support, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (RQ-862)

Dear Mr. Vance and Mr. Wilkerson:

You ask about the constitutionality of sections 1.045 and 1.07(a)(1) of the Family Code. These provisions require an applicant for a marriage license to submit a sworn statement that he or she does not owe delinquent court-ordered child support. Newly enacted section 1.045 provides as follows:

> (a) An applicant for a marriage license shall submit to the county clerk a statement witnessed by two credible persons and verified before a person authorized to take oaths stating that as of the date the application for a marriage license is filed the applicant does not owe delinquent court-ordered child support.

> (b) A child support payment is considered delinquent for purposes of Subsection (a) if the child support obligee under a child support order that applies to the applicant is entitled to seek enforcement of an arrearage under Subchapter B, Chapter 14.

> (c) A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning, the person submits a false statement under this section.

> (d) An offense under this section is a state jail felony.

Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 5.04, 1995 Tex. Sess. Law Serv. 3543, 3559. At the same time the legislature enacted the foregoing provision, it also amended section 1.07(a)(1) of the Family Code, which establishes the conditions under which a county clerk may issue a marriage license. *Id.* § 5.05. That section now provides that a county clerk may not issue a marriage license if either applicant fails to provide the information required by section 1.045. *See* Fam. Code § 1.07(a)(1).

You express concern that the foregoing provisions violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, citing *Zablocki v. Redhail*, 434 U.S. 374 (1978). In that case, the United States Supreme Court considered the constitutionality of a Wisconsin statute that prohibited certain persons, namely every Wisconsin resident "having minor issue not in his custody and which he is under obligation to support by any court order or judgment," from obtaining a marriage license without a court order. *Id.* at 375 & n.1. The statute provided that a court order giving permission could be granted only if the marriage applicant submitted proof of compliance with the support obligation and demonstrated that the children covered by the order "[were] not then and [were] not likely thereafter to become public charges." *Id.* The opinion of the Court, after affirming that the right to marry is fundamental, *id.* at 383-86, concluded that the statute significantly interfered with that fundamental right, and was therefore subject to strict scrutiny under the Equal Protection Clause, *id.* at 388. We believe a court faced with a constitutional challenge to the foregoing Texas statutes would conclude that *Zablocki* controls and would thus consider whether the statutes significantly interfere with the right to marry and, if so, whether they survive strict scrutiny.

In *Zablocki*, the Court recognized that reasonable state regulations that do not significantly interfere with decisions to enter into marriage may legitimately be imposed, but held that the statute at issue interfered "directly and substantially with the right to marry," *id.* at 387, for the following reasons:

> Under the challenged statute, no Wisconsin resident in the affected class may marry in Wisconsin or elsewhere without a court order, and marriages contracted in violation of the statute are both void and punishable as criminal offenses. Some of those in the affected class . . . will never be able to obtain the necessary court order, because they either lack the financial means to meet their support obligations or cannot prove that their children will not become public charges. These persons are absolutely prohibited from getting married. Many others, able in theory to satisfy the statute's requirements, will be sufficiently burdened by having to do so that they will in effect be coerced into forgoing their right to marry. And even those who can be persuaded to meet the statute's requirements suffer a serious intrusion into their freedom of choice in an area in which we have held such freedom to be fundamental.

*Id.*

We believe it is very likely that a court considering a constitutional challenge to the Texas statutes would similarly conclude that they burden a fundamental right. Under the statutes, no person may obtain a marriage license in Texas without submitting the sworn statement to the county clerk. A person who submits a false statement is subject to criminal penalties. Persons who owe delinquent court-ordered child support will be unable to obtain a marriage license until they have paid their child support obligations. Those who are financially unable to meet their child support obligations will not be able to

submit such a statement and therefore will be precluded from entering into ceremonial marriage. "Many others, able in theory to satisfy the statute's requirements, will be sufficiently burdened by having to do so that they will in effect be coerced into forgoing their right to marry." *Id.*

There is a significant difference between the Wisconsin statute and the Texas statutory scheme that we believe a court would consider. The Wisconsin statute provided that marriages contracted in violation of the statute were void. In this state, a marriage license is required for ceremonial marriage. *See* Fam. Code § 1.01. This state, however, recognizes common-law marriage, which may, but need not, be evidenced by declaration of informal marriage. *Id.* §§ 1.91 - .95. Every marriage entered into in Texas is considered valid unless it is made void by law or it is made voidable by law and is annulled. *Id.* § 2.01. The fact that a party to a marriage makes a false statement under section 1.045 of the Family Code does not make the marriage void or voidable.[1] Moreover, the validity of a ceremonial marriage is not affected by any fraud, mistake, or illegality that occurred in obtaining the marriage license. *Id.* § 2.02.[2]

Therefore, unlike the Wisconsin statute, the Texas statutes do not absolutely preclude a person who owes delinquent court-ordered child support from entering into a legally valid marriage. He or she may do so by obtaining a marriage license in violation of section 1.045 and entering into a ceremonial marriage (which will be valid despite the illegality, *see id.*), or entering into a common-law marriage with or without filing a declaration of informal marriage. We do not believe that a court would necessarily conclude on the basis of this fact, however, that the Texas statutes impose any less significant burden on the right to marry. A person who illegally obtains a marriage license would be subject to criminal prosecution under subsections (c) and (d) of section 1.045. Furthermore, many couples, for religious or other deeply held personal reasons, may not view common-law marriage as an option.[3]

---

[1]A marriage is void only if the parties to it are related within a prohibited degree of consanguinity, Fam. Code § 2.21, or if either party was previously married and the prior marriage is not dissolved, *id.* § 2.22. A marriage is voidable if one of the parties to the marriage is underage or was under the influence, incompetent, or permanently impotent at the time of the marriage. *Id.* §§ 2.41, .42, .43, .45. A marriage is also voidable by a party if the other party used fraud, duress, or force to induce the party to enter into the marriage, *id.* § 2.44, or concealed the fact that he or she was divorced from a third party within the thirty day period preceding the marriage, *id.* § 2.46. In addition, a marriage is voidable if the marriage ceremony takes place within 72 hours following the issuance of the marriage license. *Id.* § 2.48.

[2]The validity of a ceremonial marriage is also not affected by the lack of authority of the person conducting the marriage ceremony. *Id.* § 2.03.

[3]Ceremonial marriages may be conducted by Christian ministers and priests, Jewish rabbis, and persons who are officers of religious organizations and who are duly authorized by the organization to conduct marriage ceremonies. *See id.* § 1.83(a)(1) - (3). Thus, ceremonial marriage is generally understood as the means of entering into religiously sanctioned marriage that is recognized by the state. While a common-law marriage may in some cases be religiously sanctioned, it would not be recognized by the state for that reason. Ceremonial marriage is also generally understood as the means of entering into

Assuming that a court were to conclude that sections 1.045 and 1.07(a)(1) burden a fundamental right, it would then consider the state's interests:

> When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.

*Zablocki*, 434 U.S. at 388. The state of Wisconsin asserted that the statute at issue in *Zablocki* served two interests: "the permission-to-marry proceeding furnishes an opportunity to counsel the applicant as to the necessity of fulfilling his prior support obligations; and the welfare of the out-of-custody children is protected." *Id.* The Court assumed that these interests were legitimate and substantial, but concluded that the statute could not be sustained because "the means selected by the State for achieving these interests unnecessarily impinge on the right to marry." *Id.* There was no evidence that the statute was designed to further the first interest. *See id.* at 388-89. With respect to the second interest, the Court concluded that the "collection device" rationale could not justify the statute's broad infringement on the right to marry for the following reasons:

> First, with respect to individuals who are unable to meet the statutory requirements, the statute merely prevents the applicant from getting married, without delivering any money at all into the hands of the applicant's prior children. More importantly, regardless of the applicant's ability or willingness to meet the statutory requirements, the State already has numerous other means for exacting compliance with support obligations, means that are at least as effective as the instant statute's and yet do not impinge upon the right to marry [including wage assignments, civil contempt proceedings, and criminal penalties].

*Id.* at 389-90. The Court also dismissed the suggestion that the statute protected the ability of applicants to meet support obligations by preventing them from incurring new support obligations:

> [T]he challenged provisions . . . are grossly underinclusive with respect to this purpose, since they do not limit in any way new financial commitments by the applicant other than those arising out of the contemplated marriage. The statutory classification is substantially overinclusive as well: Given the possibility that the new spouse will actually better the applicant's financial situation by contributing income from a job or otherwise, the statute in many

---

(footnote continued)
marriage sanctioned by a civil ceremony conducted by a judge. *See id.* § 1.83(a)(4), (b) (specifying judges who are authorized to conduct marriage ceremonies).

> cases may prevent affected individuals from improving their ability to
> satisfy their prior support obligations.

*Id.* at 390.

We assume the legislature enacted section 1.045 and amended section 1.07(a)(1) in order to protect the economic interests of marriage applicants' prior children by encouraging the payment of support obligations and preventing delinquent obligors from incurring new child support obligations.[4]  It is very likely that a court applying the standard articulated in *Zablocki* would determine that the Texas statutes are not narrowly tailored to achieve only those interests.  Like the Wisconsin statute, the Texas statutes merely preclude a marriage license applicant who is delinquent from entering into ceremonial marriage, without obtaining funds for the applicant's prior children. Furthermore, the state of Texas, like the state of Wisconsin, has many more effective means of enforcing court-ordered child support.  *See, e.g.,* Fam. Code chs. 157 (enforcement of child support orders), 158 (withholding from earnings for child support), 231 (Title IV-D program), 232 (suspension of license for failure to pay child support). The Texas statutes also suffer the same defects as the Wisconsin statute with respect to the goal of preventing delinquent child support obligors from incurring new child support obligations:  they do not limit in any way new financial commitments by an applicant other than those arising out of the contemplated ceremonial marriage[5], nor do they take into account the possibility that the new spouse will actually better the applicant's financial situation by contributing income, thus improving the applicant's ability to satisfy prior support obligations.  For these reasons, it is the opinion of this office that sections 1.045 and 1.07(a)(1) of the Family Code unnecessarily impinge on the right to marry and therefore violate the Equal Protection Clause.[6]

---

[4]We have reviewed the legislative history of section 1.045 and the amendment to section 1.07(a)(1), including both bill analyses and floor debates, and have found no expression of legislative intent or purpose.

[5]The statutes are also grossly underinclusive with respect to this purpose because they do not limit financial commitments that delinquent obligors may take on by entering into common-law marriage.

[6]Similar statutes in other states have been found unconstitutional by courts applying the standard articulated in *Zablocki. See Cooper v. Utah,* 684 F. Supp. 1060, 1969-70 (C.D. Utah 1987) (holding unconstitutional Utah statute providing that person ordered to pay child support by court may not lawfully enter into marriage unless he or she establishes that he or she is current in payment of obligation); *Miller v. Morris,* 386 N.E.2d 1203, 1204-05 (Ind. 1979) (holding unconstitutional Indiana statute providing that marriage license shall not be issued to any person who has dependent children unless he or she submits proof that he or she is in compliance with support orders).

### S U M M A R Y

Family Code sections 1.045 and 1.07(a)(1), requiring an applicant for a marriage license to state under oath that he or she does not owe delinquent court-ordered child support, unnecessarily impinge on the right to marry and therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General